Ray O'Hara, Appellee, v. Central Illinois Light Company, Appellant.

Gen. No. 9,379.

338

Opinion filed May 27, 1943.

C. V. FRINGS, of Pekin, and J. J. ALLOY and EMERSON T. ANTHONY, both of Peoria, for appellant.

WILLIAM M. COPPEL, of Havana, and VELDE & PRETTYMAN, of Pekin, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.

Plaintiff recovered a judgment for $5,000 against defendant for personal injuries alleged to have been sustained as the result of an electric shock, claimed to have been received when he touched an electric clock which hung on the wall of the kitchen in a farm house. Defendant appeals.

On Sunday, February 11, 1940, plaintiff lived in the home of George Eidman, where he was employed as a

farm hand. The house was lighted with electricity supplied by defendant. By means of poles and wires erected and maintained by defendant, electricity of about 2300 volts was conveyed over primary wires to a pole located about 75 feet from the farm house. Electricity was conveyed from such pole to the house by secondary wires. On the pole defendant maintained an electric step-down transformer, which, if properly built and maintained, would reduce the voltage flowing from the primary wires to the secondary wires so that the voltage entering the house would be between 110 and 120 volts.

The kitchen was on the north side of the house. Immediately south of the kitchen was the dining room. The kitchen floor was of wood and was covered with linoleum. Between the floor and the earth below the floor was an air space.

On the south side of the kitchen, near the southwest corner, there was a cookstove. Close to the northwest corner was a cream separator, and close to the northeast corner was a wash stand which had no pipe connection. The clock in question hung about six feet from the floor, and on the north wall of the kitchen, by means of a nail. About two feet to the left of the clock was a wall socket with which the clock was connected by means of an extension cord and plug, the cord being about three feet in length.

Plaintiff testified that there was no metal on his person; that he was wearing shoes; that he walked from the dining room into the kitchen and was going to reset the clock which had stopped; that he was not touching any "article of furniture"; that as he reached with his right hand and touched the clock that was "the last thing" he knew and he did not know what happened.

George Eidman testified that he was sitting in the dining room but could see the clock, which had stopped a few minutes after 12 noon; that plaintiff left the

dining room saying he would start the clock, and reached with his hand to take the clock from the wall and was knocked back against the south wall of the kitchen; that plaintiff then or soon thereafter entered the dining room and sat in a chair until Doctor Wright came, during which time plaintiff was "groggy"; that Mrs. Eidman at once 'phoned Dr. Wright, but the doctor did not come until about 2 p. m.; that witness saw plaintiff's right arm was burned.

Eidman further testified that after the plaintiff re-entered the dining room Eidman pulled the connecting cord and then attempted to take the clock from the wall, but the clock was too hot to handle, so he waited until it had cooled and then removed it from the wall.

Mrs. Eidman, the only other occupant of the house at the time in question, died before the trial.

Doctor Wright, a witness for plaintiff, testified that about 3 p. m. he arrived at the Eidman home; that plaintiff was sitting in a chair partially conscious and seemed to be in agony and pain; that he saw no burn on plaintiff's clothing, but on removing the shirt of plaintiff saw that plaintiff had a third degree burned area on the right forearm which extended from about one inch above the wrist to about one and one-half inches below the elbow, and a lesser burned area, not a severe burn, on the left arm; that the burn on the right arm was a third degree burn which would include some of the muscles; that he discovered the next day that the plaintiff had burns on each leg, anteriorly, about two inches above the ankle; that the burn on the right leg was about one and one-half or two inches long and one inch wide.

Doctor Jordan, a witness for plaintiff, testified to having had considerable experience with cases of electric shock and electric burns; that death might be caused by 110 volts, as in a bath tub where a person injured is well grounded; that injuries from voltages of 110 to 115 volts are of two types, either resulting in

minor burns or in instant death, but not in third degree burns; that third degree burns usually have to be caused by over 1000 volts; that voltages of from 1000 to 4000 volts cause third degree burns; that when there is little or no current a house voltage of from 110 to 115 volts causes minor burns, but not third degree burns. He further testified that he first saw and examined the plaintiff on February 23, 1942; that plaintiff then had a scar on the right forearm about three inches long and one quarter inch wide, deep enough to involve the muscles, and on the same forearm there was a large area occupying almost two thirds of the flexor surface which was anesthetic or devoid of sensation; that the left arm had a scar on the flexor surface two inches in diameter; that the right leg, on the inner surface, had a scar 3x1½ inches in length, and the left leg, on the inner surface, had a scar about two inches in diameter; that there was a definite permanent loss of strength in the right arm as a result of such injury, but there was no loss of muscular tissue of the left arm or legs.

Plaintiff offered no evidence tending to show any specific negligence, but relied solely on the doctrine of *res ipsa loquitur*.

Whether or not the foregoing testimony was true was a question of fact for the jury. If true, then such evidence shows or tends to show that plaintiff, while in the exercise of reasonable care, was injured through receiving an excessive voltage of electricity of from 1000 to 2300 volts, which obviously must have come from the primary wires of the defendant. If such evidence was true, then, in our opinion, the doctrine of *res ipsa loquitur* is applicable. (See *Feldman v. Chicago Rys. Co.,* 289 Ill. 25; *Chicago Union Traction Co. v. Giese,* 229 Ill. 260; *Goddard v. Enzler,* 123 Ill. App. 108; *San Juan Light & Transit Co. v. Requena,* 224 U. S. 89, 56 L. Ed. 680, and cases cited in note in 32 L. R. A. (N. S.) 848.)

The doctrine of *res ipsa loquitur* is that whenever a thing which produces an injury is shown to have been under the control and management of the defendant, and the occurrence is such as, in the ordinary course of events, does not happen if due care has been exercised, the fact of injury itself will be deemed to afford prima facie evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care. (*Bollenbach v. Bloomenthal,* 341 Ill. 539.)

The defendant contends that the complaint charges specific negligence and that for this reason the doctrine of *res ipsa loquitur* cannot apply. The complaint contains four counts. Assuming, but not holding, that each of the first three counts charges specific negligence, the fourth count, in our opinion, merely charges negligence in general terms. Such count charges that the defendant negligently permitted its manufacturing plant and other machinery to become and remain out of repair so that surges of high voltage electricity were conducted in and through said wires in such a manner that a voltage greater than the customary voltage of 115 volts was allowed to enter in and through the wires of the farm house, and as a result thereof the plaintiff, while attempting to reset an electric clock, touched the clock, and received a shock and was injured. Under such count, plaintiff could rely on the doctrine of *res ipsa loquitur* to support the general allegations, even though the other counts did charge specific negligence. (See *North Chicago St. Ry. Co. v. Cotton,* 140 Ill. 486; *Feldman v. Chicago Rys. Co.,* 289 Ill. 25.)

Applying the doctrine of *res ipsa loquitur,* after the plaintiff rested his case it devolved on defendant to introduce evidence, which, taken in connection with the evidence of the occurrence, conditions and circumstances, would overcome the inference or presumption that the defendant had failed to exercise due and or-

dinary care. (*Chicago Union Traction Co. v. Giese, supra; Bollenbach v. Bloomenthal, supra.*) To meet such prima facie case the defendant introduced evidence which, if true, showed or tended to show that excessive voltage, if any, would have had to pass through the transformer in question from the primary wires to the secondary wires; that the transformer was of standard make, suitable for the purpose of· reducing voltage from 2300 volts to between 110 and 120 volts; that after the accident the transformer was tested and found to be in good working order and in no way defective; that at the time of such tests no excessive voltage was entering the house; that the primary wires, as well as the secondary wires, which connected the meter in the house, were properly installed and in no way defective; that the system was properly grounded, and the fuse boxes and the main fuse in the house were found normal; that if a current of electricity flowed from the clock there would be visible indications on such clock of such flow, but there were no such indications. Defendant also introduced evidence which, if true, showed or tended to show that dry wood is an excellent insulator against an electrical current, that if there were 2300 volts of electricity in such clock a man standing on a dry wooden floor, with an air space under the floor, could not receive an electric shock by touching the clock, provided he had no metal object about him and touched the clock with one hand, because such man was not grounded.

Defendant also produced medical testimony which tended to show that the burns received by plaintiff were not of the type caused by large electrical voltages. One of such witnesses testified that it would take more than 110 volts to get a very severe burn.

Defendant contends that having introduced such evidence, all presumptions of negligence vanished, and that under the authority of *Bollenbach v. Bloomenthal, supra,* it was error for the court to deny the defend-

ant's motion for a directed verdict at the conclusion of all the evidence.

We do not agree with this contention. We cannot say as a matter of law that in this case all presumptions of negligence vanished, but it is our opinion that the question of whether the defendant offered such explanation of the accident as to relieve itself of the presumption of negligence was a question of fact for the jury. (See *Alton Railway & Illuminating Co. v. Foulds,* 81 Ill. App. 322; *Drake Standard Mach. Works v. Brossman,* 135 Ill. App. 209.) In *Humphrey v. Twin State Gas & Electric Co.,* 100 Vt. 414, 139 Atl. 440, 445, 56 A. L. R. 1011, the court said: "There was evidence, to be sure, tending to show that the defendant had discharged the duty of care which the law imposed upon it. But the current escaped. Whether the tie wire broke without defendant's fault, or whether it broke through insufficiency in size and strength, through lack of guying, or through other causes for which the defendant was chargeable, was an open question, too plainly for the jury to merit discussion. Our attention is not called to a single case, within the range of the maxim (res ipsa loquitur), in which the proof was such that a defendant's verdict was directed. Indeed, Chief Justice Marshall says in the *Glowacki* case, above cited, that no such case is to be found in the books." (See also *Orr v. Des Moines Elec. Light Co.,* 213 Ia. 127, 238 N. W. 604; *Fox v. Keystone Tel. Co.,* 326 Pa. 420, 192 Atl. 116; *Peterson v. Minnesota Power & Light Co.,* 207 Minn. 387, 291 N. W. 705; *Mares v. New Mexico Public Service Co.,* 42 N. M. 473, 82 P. (2d) 257.)

Defendant contends that it cannot be held liable because the evidence shows that it did not install and had no control of the wiring in the Eidman house, plaintiff having offered no evidence to show such wiring was properly installed or in good condition. It is sufficient to say that there was no evidence tending to

show that the wiring in the Eidman house had anything to do with the production or escape onto the secondary wires of the alleged excessive voltage.

Defendant further contends that under the evidence it was scientifically impossible for the plaintiff to have received electrical burns on his arms and legs in the manner alleged by him because of his not being grounded. One factor to be considered in determining whether plaintiff was grounded was the condition of the floor at the time of the accident. Defendant insists that the evidence shows conclusively that the floor was dry and could not furnish a ground for the plaintiff. The only evidence on this subject was that of the plaintiff himself who testified that "there was no water on the floor." Obviously this statement did not exclude the possibility of the floor being sufficiently damp to furnish a conduit or ground for electricity.

We think that the trial court properly denied the motion for a directed verdict made by the defendant both at the close of plaintiff's case and at the close of all of the evidence.

We shall now discuss the alleged errors which defendant claims entitle it to a new trial.

Plaintiff's ninth instruction was a mandatory instruction which did not correctly state the law in that it imposed on the defendant an absolute duty to control and regulate the voltage of electricity delivered so as not to endanger plaintiff's life and limb. Defendant was under no such absolute duty but was only required to use reasonable care, commensurate with the known danger associated with the transmission of electricity. (*Austin v. Public Service Co.*, 299 Ill. 112; *Bissel v. Eastern Ill. Utility Co.*, 222 Ill. App. 408.) In the *Bissel* case, *supra,* plaintiff brought suit to recover damages resulting from the alleged failure of the defendant company to furnish electricity according to the terms of a certain ordinance. One of the instructions given on behalf of the plaintiff informed the jury

that "it became and was the duty of the defendant to furnish to plaintiff a continuous, constant and adequate supply of electricity for the lighting and use in a place of business." In condemning this instruction the court said at page 415: "This instruction states the duty of appellant in stronger terms than is warranted under the law. It, in effect, makes appellant a guarantor of continuous, constant and adequate service. It was the duty of appellant to use all reasonable care to give adequate service and that is all the law requires." We think the instruction here complained of is subject to the same criticism as the instruction in the *Bissel* case.

Ten instructions were given at the request of plaintiff, four of which in almost identical language advised the jury that they could consider the pain and suffering of plaintiff and his expenses, loss of health, etc., in assessing plaintiff's damages. Although we recognize that some latitude should be allowed in giving sufficient instructions to cover every phase of a damage claim, we can see no justification in repeating practically identical instructions on the subject of damages. Such repetition has been held to be error in *Kahl v. Chicago M. & St. P. Ry. Co.*, 125 Ill. App. 294; *Meachem v. Henry Hahn & Co.*, 46 Ill. App. 144.

Defendant complains of plaintiff's given instructions five and six. Instruction five applies the doctrine of *res ipsa loquitur* to the facts of the present case. Instruction six contains an abstract statement of the *res ipsa loquitur* doctrine. We do not think that the giving of instruction five was error. We see no reason for repeating the *res ipsa loquitur* doctrine by the giving of instruction number six.

Defendant makes the further contention that the court should have given its instructions numbered four, five, six and eight. We think that defendant's instructions four, five, and eight were properly refused. As to instruction number six defendant was not prejudiced by the refusal of the court to give such instruc-

tion inasmuch as the same subject matter was included in defendant's given instructions eight and ten.

Plaintiff has made no attempt to justify the action of the trial court in the giving and refusal of any of the foregoing instructions but relies solely on the rule that instructions should be considered as a series. We have considered all of the instructions given in this case and we are of the opinion that the damaging effect of plaintiff's instruction number nine and the repetitious instructions on damages which we have already referred to was not lessened by the other instructions given in the case.

Defendant also complains of error in the action of the trial court in permitting plaintiff over defendant's objection to roll up his sleeve and exhibit to the jury certain scars on his right arm. In *Wagner v. Chicago R. I. & P. Ry. Co.*, 277 Ill. 114, the court said: "Whether one who is injured may exhibit an injured member to the jury is primarily in the discretion of the trial court, and it is properly exercised in any case where the personal view will aid the jury in understanding the evidence, and that may be so where there is no controversy concerning the injury nor the extent of it, as was the fact in this case. . . . Where, however, the only purpose and effect of an exhibition of that kind is to excite feeling rather than to enlighten the jury as to any fact or to aid in settling any disputed question of fact it should not be permitted. In this case there was not only no controversy concerning the injury nor the extent of it, as was stated at the time of the proposed exhibition, but the evident purpose was to excite in the minds of the jury pity and commiseration for the condition of the plaintiff and thereby to increase the damages. The exhibition for the purpose which the record shows was intended should not have been allowed, and if it now appeared that the damages allowed were excessive it would be necessary to reverse the judgment." In the case at bar plaintiff's arm contained scars not only from the

348

alleged electrical burns but also from more recent burns caused by scalding. In our opinion the exhibition of the plaintiff's arm did not tend to throw any light on any issue in this case and under the particular circumstances involved should not have been permitted.

Defendant contends that the trial court also erred in permitting the plaintiff to introduce further proofs after both sides had rested and after a motion by defendant for a directed verdict had been disposed of and the court had adjourned until the following morning. The evidence complained of will be available to plaintiff upon a retrial of the case and there is no possibility of this alleged error being repeated. Under these circumstances we do not deem it necessary to make any further comment on the action of the trial court in admitting such evidence.

It is our opinion that the errors indicated are sufficient to require a new trial. Therefore, the judgment of the trial court is reversed and the cause is remanded to such court for a new trial.

*Reversed and remanded.*