THIRD DIVISION
November 8, 2006

No. 1-05-3827

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| CITGO PETROLEUM CORPORATION and PDV MIDWEST REFINING L.L.C. | ) ) | Appeal from the Circuit Court of |
| Plaintiffs, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 03 L 009812 |
| McDERMOTT INTERNATIONAL, INC.; J. RAY McDERMOTT, S.A.; J. RAY McDERMOTT, INC.; | ) ) | |
| McDERMOTT INCORPORATED; THE BABCOCK and WILCOX COMPANY; THE BABCOCK and WILCOX COMPANY, TUBULAR PRODUCTS DIVISION; ALLIANCE TUBULAR PRODUCTS DIVISION formerly PITTSBURGH TUBE COMPANY; | ) )) )) )) )) | Honorable Jeffrey Lawrence II, Judge Presiding. |
| AMERICAN MIDCO PIPE and TUBE, INC. a/k/a MIDCO PIPE and TUBE; J.H. ROBERTS INDUSTRIES, INC. | ) ) ) | |
| Defendants | ) | |
| _____ | ) | |
| | ) | |
| (The Babcock and Wilcox Company, | ) | |
| Third-Party Plaintiff-Appellant; | | |
| Union Oil Company of California, d/b/a Unocal, | | |
| Third-Party Defendant-Appellee). | | |

JUSTICE KARNEZIS delivered the opinion of the court:

Plaintiffs CITGO Petroleum Corporation and PDV Midwest Refining, L.L.C.,

(collectively CITGO) filed suit against defendant The Babcock & Wilcox Co. (B&W) and

numerous additional defendants for damages resulting from a fire at its oil refinery in

Lemont, Illinois. B&W filed a third-party complaint against Union Oil Company of California (Unocal), a prior owner of the refinery. The circuit court dismissed with prejudice B&W's third-party complaint against Unocal, and B&W now appeals. The underlying complaint filed by CITGO against defendants alleged that on or about August 14, 2001, a fire damaged its refinery, causing over $600 million in damages. The fire was alleged to have occurred as a result of an elbow pipefitting suddenly rupturing, allowing hot oil and chemicals to escape, causing a series of fires that led to "catastrophic physical damage" to the crude unit at the refinery. According to the complaint, the elbow pipefitting was improperly designed, labeled and manufactured by B&W. Specifically, the pipefitting was to contain 4% to 5% chromium and B&W provided a "Certificate of Test" that purported to confirm that the pipefitting contained 4.66% chromium. Chemical analysis on the pipefitting after the fire revealed that it contained only .88% chromium.

B&W filed a third-party complaint against Unocal on March 2, 2005, pursuant to section 2-406 of the Code of Civil Procedure (735 ILCS 5/2-406 (West 2002)), which governs bringing in new parties for third-party proceedings. B&W's third-party complaint alleged that Unocal was negligent in failing to ensure "the safe and proper installation, inspection, maintenance, and operation of the refinery's piping equipment, including the elbow pipefitting sold by B&W." The complaint alleged that between 1970 and 1982, the refinery was built at the direction of its original owner and operator, Unocal. The complaint further alleged that, in 1982, B&W learned that certain products it had sold as

containing 5% chromium, including the pipefitting sold to Unocal, might consist of a different alloy with a lesser chromium content. B&W contacted Unocal and the distributor that sold the pipefitting to Unocal, informed them of the possible problem, and offered to replace the pipefitting. Unocal, through its purchasing and warehouse manager, Mike Hodor, told B&W that it "enforces a strict inspection of alloy fittings prior to installation," that it had inspected the pipefitting and tested it for chromium content with a nuclear analyzer, that the pipefitting met specifications, and that the pipefitting did not need to be replaced.

Unocal filed a motion to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2002)).[1] Unocal's motion to dismiss was based on section 13-214 of the Code of Civil Procedure (735 ILCS 5/13-214 (West 2002)). Section 13-214, also commonly referred to as the construction statute of repose, provides in pertinent part:

"[N]o action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or

_____

[1]The copy of the motion in the record is not date stamped. The date on the notice of motion is July 8, 2005.

3

construction of an improvement to real property after 10 years have elapsed from the time of such act or omission." 735 ILCS 5/13-214(b) (West 2002).

Unocal maintained that because the B&W pipefitting was alleged to have been installed at the refinery in the early 1980s and because the refinery was alleged to have been completed in 1982, B&W's cause of action was barred because more than 10 years had elapsed since the installation of the pipefitting and the filing of B&W's complaint.

Prior to the circuit court ruling on Unocal's motion to dismiss, B&W filed an amended third-party complaint on August 3, 2005. The amended complaint was brought pursuant to the Joint Tortfeasor Contribution Act (740 ILCS 100/1 *et seq.* (West 2002))(Contribution Act), as well as section 2-406 of the Code of Civil Procedure (735 ILCS 5/2-406 (West 2002)). The Contribution Act provides in pertinent part:

"[W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property, * * * there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a) (West 2002).

B&W's amended third-party complaint also alleged that the elbow pipefitting was "installed either in approximately 1982 * * * or at some later date by Unocal." The complaint further alleged that Unocal "failed to exercise due care in adequately inspecting and maintaining the B&W pipefitting."

Unocal filed a motion to dismiss B&W's amended third-party complaint pursuant

to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2002)).

Unocal argued that B&W's third-party complaint for contribution was barred because

Unocal was not subject to liability in tort to CITGO. Unocal referenced two contracts

that allegedly precluded tort liability between Unocal and CITGO. Unocal argued in its

motion that the provisions in the contracts immunized Unocal from any contribution

action brought by B&W pursuant to a joint-tortfeasor theory because Unocal owed no

tort duty to CITGO.

The circuit court ruled on both of Unocal's motions to dismiss. The court denied

Unocal's first motion with respect to the construction statute of repose. The court relied

in part on the Third District case of MBA Enterprises, Inc., v. Northern Illinois Gas Co.,

307 Ill. App. 3d 285 (1999). The circuit court noted that in MBA, the court held that the

statute of repose applied to claims of negligent operation and maintenance of a

defective gas piping system. In ruling on Unocal's motion, the circuit court stated that it

found "no factual distinction between this case and the MBA case which involved - -

both of those cases involved an explosion which was alleged to have been caused by a

failure to maintain the instrumentality in a safe condition over a period of time." The

court noted that the MBA case seemed to be somewhat of an exception to the statute of

repose, which has been applied to claims of construction rather than claims of

maintenance, by stating that: "Now, one might say that [the Third District's exception] is

legislating from the bench, but that is not for me to say." Nevertheless, the circuit court

determined that, based upon the holding in MBA, Unocal's motion to dismiss should be

denied.

With respect to Unocal's second motion to dismiss, the circuit court granted the motion, finding that the two contracts between Unocal and CITGO extinguished Unocal's tort liability to CITGO and therefore barred B&W's contribution claim because Unocal was not "subject to liability in tort to the plaintiffs."

B&W now appeals the circuit court's dismissal of its third-party complaint. For the foregoing reasons, we find that the circuit court erred in denying Unocal's first motion to dismiss with respect to the construction statute of repose. In light of this determination, we need not reach the issue of whether the circuit court properly granted Unocal's second motion to dismiss based on the Contribution Act. Therefore, since we find that Unocal's first motion to dismiss should have been granted, we find that the court's order dismissing B&W's third-party complaint, albeit on other grounds, should be affirmed. We note that we may affirm the circuit court's order on any basis in the record. Cronin v. McCarthy, 264 Ill. App. 3d 514, 529 (1994).

When reviewing a motion to dismiss, this court accepts all well-pled facts as true and draws all reasonable inferences in favor of the nonmoving party. Dewan v. Ford Motor Co., 363 Ill. App. 3d 365, 368 (2005). A section 2-615 motion to dismiss challenges only the legal sufficiency of the complaint. Jarvis v. South Oak Dodge, Inc., 201 Ill. 2d 81, 85 (2002). The central inquiry is whether the allegations of the complaint, when considered in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. Jarvis, 201 Ill. 2d at 86. Our review

of a circuit court's order granting or denying a motion to dismiss is *de novo*. O'Brien v. City of Chicago, 285 Ill. App. 3d 864, 869 (1996).

The construction statute of repose was enacted for the express purpose of insulating all participants in the construction process from the onerous task of defending against stale claims. Wright v. Board of Education of the City of Chicago, 335 Ill. App. 3d 948, 955 (2002). Illinois courts have generally limited the application of the statute to claims of construction or improvements to real property. Wright, 335 Ill. App. 3d at 955.

In O'Brien v. City of Chicago, 285 Ill. App. 3d 864, 869 (1996), the plaintiff's decedent was killed in an automobile accident. The plaintiffs alleged that the absence of an adequate median on the road, which had been constructed and maintained by the City of Chicago, led to the decedent's death. This court found that the plaintiff's claim fell within the statute of repose and was thus barred because 10 years had passed between the construction of the road and the filing of the plaintiff's claim. The court noted that although the plaintiff's complaint alleged that the City negligently "'operated, maintained, repaired and altered'" the road, the complaint was in essence a complaint for a "design defect," which fell within the application of the statute of repose. O'Brien, 285 Ill. App. 3d at 870.

However, as the circuit court in the case at bar noted, the Third District case of MBA did recognize an exception to the general application of the statute of repose. In MBA, the plaintiffs alleged that the defendant gas company was "negligent for

continuing to use, maintain and sell gas through the defective piping system." MBA, 307 Ill. App. 3d at 288. This court held that the plaintiffs' claims were not time-barred by the construction statute of repose because they were based on the theory that the gas company owed the plaintiffs an ongoing duty of care to operate and maintain the gas system in a safe manner, rather than based upon the initial construction of the gas piping system. MBA, 307 Ill. App. 3d at 288. The court noted that "[t]o the extent that O'Brien holds that the statute of repose bars any cause of action for negligence that may arise after the construction or installation of an improvement when the underlying claim is a defective design or construction claim, we decline to follow that case." MBA, 307 Ill. App. 3d at 288-89.

The dissent in MBA disagreed with the majority's interpretation, stating that because the plaintiffs' allegations of negligent operation and maintenance of the gas piping system were "directed exclusively to the construction, installation, fabrication, and design of the piping system," the plaintiffs' claims fell within the statute of repose and should be time-barred. MBA, 307 Ill. App. 3d at 290 (Koehler, J., specially concurring in part and dissenting in part). The dissent relied on the testimony of two opinion witnesses who had testified that the gas leak that caused the explosion was due to the failure of the stopper nipple that was used in the system. The witnesses had stated that the failure was the result of a hole in the stopper nipple, which was poorly drilled during the assembly of the piping system. The witnesses also criticized the use of the type of stopper nipple, a choice that was made before or during assembly of the system.

Therefore, the dissent concluded that because the plaintiffs' claims of negligent failure to maintain were related to the construction of the gas piping system, the claims fell within the construction statute of repose and should be time-barred. MBA, 307 Ill. App. 3d at 291 (Koehler, J., specially concurring in part and dissenting in part).

In a recent case subsequent to MBA, this court in Wright v. Board of Education of the City of Chicago, 335 Ill. App. 3d 948 (2002), recognized this court's divergent application of the statute of repose in MBA. In Wright, the plaintiff fell on a concrete stair while exiting a building. The stair had remained unchanged since its installation in 1965. This court held that the plaintiff's claims were barred by the construction statute of repose because they were based on the construction of the stairs, which had been built more than 30 years prior to the plaintiff's injury. This court noted the differences between O'Brien and MBA, and concluded that because the instrumentality at issue that caused the injury, the concrete stair, was more akin to the facts in O'Brien rather than MBA, the court followed O'Brien in concluding the plaintiff's claims were barred by the construction statute of repose. Wright, 335 Ill. App. 3d at 957. The court reasoned that "[t]o apply an ongoing duty to improve the property * * * would defeat the stated purpose of the construction statute of repose, that being the insulation of participants in the construction process from defending against stale claims." Wright, 335 Ill. App. 3d at 958.

Here, we are presented with a situation in which, depending upon which line of cases we follow, we will reach different outcomes. If we follow O'Brien and Wright,

9

B&W's claims would be barred by the construction statute of repose because more than 10 years had passed from the installation of the pipefitting in "approximately 1982" to its eventual demise in 2001. If we follow MBA, B&W's claims for negligently failing to maintain the refinery's piping equipment would not be time-barred because they would not fall within the parameters of the statute of repose. We believe that this court's polite decline in Wright not to follow MBA because the facts in Wright were more akin to the facts in O'Brien will not work in this instance. As the circuit court already noted, it denied Unocal's motion to dismiss pursuant to MBA because "both cases involved an explosion which was alleged to have been caused by a failure to maintain the instrumentality in a safe condition over a period of time." Therefore, with all due deference accorded to the Third District's opinion in MBA, we find that we are unable to follow MBA because it conflicts with the language in the statute of repose and case law. We find that the dissent in MBA is a more accurate application of the statute. As the dissent in MBA pointed out, because the plaintiffs' claims, although couched in terms of "failure to maintain," were based on a defective product that was installed at the time of the construction of the gas piping system, they fell within the statute of repose and were thus time-barred.

Similarly, in the case at bar, B&W alleged that Unocal was negligent in failing to maintain the refinery's piping system. These allegations were based on the defective pipefitting, which was alleged to have been installed when the refinery was constructed. Therefore, we find that B&W's claims fall within the statute of repose and are time-

10

barred because more than 10 years had passed from the installation of the pipefitting to the filing of B&W's complaint. Our conclusion is consistent with the language of the statute as well as the holdings in O'Brien and Wright. As stated above, our conclusion conflicts with the court's holding in MBA; however, we believe that the majority opinion in MBA carves out an exception that was not intended when the legislature enacted the statute.

Even if we were to construe B&W's allegations as premised only upon Unocal's "negligent inspection, maintenance, and operation of the property," as it argues in its reply brief, any duty arising out of those allegations was extinguished upon the transfer of possession and control of the property. In general, a grantor or vendor of real property is not liable for damages sustained by the vendee or other third persons on the premises subsequent to this transfer of possession and control. Restatement (Second) of Torts § 352 (1965); Rowe v. State Bank of Lombard, 125 Ill. 2d 203, 228 (1988). Accordingly, at the time of the injury, Unocal did not owe a duty to CITGO to inspect, maintain and operate the facility.

Accordingly, we affirm the judgment of the circuit court dismissing B&W's third-party complaint against Unocal.

Affirmed.

THEIS, P.J., and GREIMAN, J., concur.