SIXTH DIVISION
March 28, 2008

No. 1-06-3309

| | | |
|---|---|---|
| DANIEL RYAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois. |
| | ) | |
| | ) | |
| | ) | No. 01 L 004073 |
| v. | ) | |
| | ) | |
| COMMONWEALTH EDISON COMPANY, | ) | Honorable |
| | ) | Bill Taylor |
| Defendant-Appellee. | ) | Judge Presiding. |
| | ) | |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Electrician Daniel Ryan was injured in an on-the-job circuit breaker explosion. He brought suit against Commonwealth Edison Company (Com Ed), alleging that Com Ed was responsible for the electrical current that flowed into the building and that the severity of the accident was increased by Com Ed's negligent failure to adequately perform its ongoing maintenance duties. The trial court granted summary judgment in favor of Com Ed on grounds that Ryan's claim was time-barred by the construction statute of repose, since it occurred more than ten years after the electrical system was first installed. For the reasons that follow, we reverse and remand.

I. BACKGROUND

Viewing the evidence liberally in favor of the nonmoving party, as is appropriate under a summary judgment motion (*Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986)),

we are presented with the following description of events as alleged by Ryan:

Ryan was an electrician employed by the City of Chicago. On April 2, 2001, the day of the accident, Ryan was working in the Heating and Refrigeration (H&R) building at O'Hare International Airport in Chicago, Illinois, performing maintenance work on a circuit breaker. He was working with Byron Glista, an employee of High Voltage Maintenance Corporation (High Voltage). Com Ed installed and owned the transformer (known as transformer number 6) which provided electricity to the circuit breaker.

The procedure for the maintenance operation was that Ryan would first remove the circuit breaker from the cubicle in which it was housed; Glista would then perform the necessary repairs on it, and Ryan would reinstall the circuit breaker in its cubicle. However, when Ryan reinstalled this circuit breaker, it exploded, causing serious injury to Ryan.

Ryan filed a complaint in two counts. The first count was against Glista's employer, High Voltage. In that count, which is not currently at issue, Ryan contended that High Voltage committed negligence through the actions of its employee and was therefore responsible for Ryan's injuries.

It is Ryan's second count, which was against Com Ed, that is at issue in the instant appeal. Ryan alleged that, at the time of the accident, Com Ed had a duty to exercise ordinary care in the repair and maintenance of transformer number 6, which it had breached. Specifically, he alleged that Com Ed:

"(a) Carelessly and negligently repaired and maintained transformer number 6 which caused the [circuit breaker] to explode;

(b) Carelessly and negligently failed to maintain and repair transformer number 6 in a safe and reasonable manner given the activities then and there taking place; and

(c) Otherwise, carelessly and negligently maintained transformer number 6."

Ryan further alleged that this negligent maintenance by Com Ed was the proximate cause of the explosion, and thus, of the injuries he sustained.

On July 14, 2006, Com Ed moved for summary judgment. It argued that Ryan's claims against it were time-barred under the Illinois construction statute of repose (735 ILCS 5/13-214(b) (West 2006)), which forecloses all claims for negligent design that are brought more than ten years after a fixture to real property has been installed. Because the parties agreed that the power system at issue was over 20 years old, Com Ed contended that it was entitled to judgment as a matter of law.

In support of its motion, Com Ed referred to a report prepared by John Nelson, the electrical engineer retained as an expert by Ryan, as well as Nelson's subsequent deposition testimony. Com Ed contended that the only fault that Nelson found in Com Ed's system was in its original design and installation, as Nelson never alleged failure to repair as a cause of Ryan's injury.

Nelson based his report, dated June 7, 2004, upon a site inspection that he conducted on April 10, 2001, eight days after the accident occurred, as well as various documents that he had reviewed. In that report, Nelson stated that the transformers supplying power to the circuit breaker involved in the accident were owned by Com Ed, and they were set up in such a way that a resistor linked to the circuit breaker, which was supposed to reduce the electrical current to 300

amps, was shorted out. Hence, in his professional opinion, one of the reasons that Ryan was injured was that "ComEd was careless in the design, construction, commissioning, and follow-up testing of the incoming power system."

In his deposition, dated March 11, 2005, Nelson explained that electrical voltage is similar to water pressure in a hose: the greater the voltage, the greater the flow of power. The purpose of a resistor is to limit the flow of power. In this case, if the resistor at issue had been working correctly, it would have restricted the electric current to 300 amps. However, Nelson stated that the resistor had shorted out and become ineffective. As a result, the current flowing through the circuit breaker at the time of the accident was unrestricted and could have been as high as 28,000 amps. Nelson gave his opinion that if the resistor had not been shorted out and the electrical current had been limited to 300 amps, Ryan's injuries from the accident would have been less severe or possibly nonexistent.

In elaborating on the reasons for the resistor failure, Nelson stated that the transformer installed by Com Ed included a component known as "neutral Xo bushing" that had shorted out, thus causing the resistor to short out. Nelson opined that this bushing was probably placed when the system was first installed.

Nelson further stated that in his report, he had said that Com Ed needed to change its system setup to prevent the resistor from being shorted; nevertheless, when he went to inspect the site again the day before he gave his deposition, he discovered that nothing had been done to correct the problem. That is, he said that the configuration of the neutral Xo bushing had not been changed and that the same dangerous condition still existed. He repeated his opinion that

Com Ed's flaws in its system exacerbated the injuries Ryan received in the accident as a result of the negligence of his co-worker.

In his response to Com Ed's motion for summary judgment, Ryan argued that the construction statute of repose did not apply to his claims, because he was not alleging negligence in the way the system was designed, but rather in Com Ed's ongoing maintenance duties. "[T]he Court should not allow Com Ed to convert Plaintiff's negligence Count II of the Complaint against Com Ed into a *** construction design case," he urged. He further argued that there was a genuine issue of material fact as to whether Com Ed's failure to properly maintain the electrical system was a proximate cause of Ryan's injuries. In support of this contention, Ryan referred to the deposition testimony of Martin LeWand, a Com Ed foreman and supervisor who described Com Ed's extensive maintenance duties at O'Hare at the time of the accident.

In his deposition, LeWand testified that he had been a foreman for Com Ed since 1987, and he worked at O'Hare from around 1998 to 2002. He stated that Com Ed had around 18 employees reporting to its O'Hare office, including eight under LeWand's direct supervision, as well as at least one station operator on duty 24 hours a day, seven days a week. He also said there were three separate stations containing Com Ed transformers which supplied power to the airport. Com Ed employees performed both corrective and preventative maintenance on the equipment in those stations. Although the cables linking the transformers to the airport were not owned by Com Ed, LeWand stated that the transformers themselves were Com Ed property (along with associated equipment, such as bushing).

On April 2, 2001, LeWand was in his office at the airport when he received a telephone

No. 1-06-3309

call notifying him that an accident had occurred. He went to the H&R building, where he and one

of his employees inspected the circuit breaker that was involved in the accident. He then

proceeded to the station that housed the transformer supplying power to that circuit breaker,

which was about half a block away. Since it was obvious the transformer had exploded and was

no longer functional, LeWand made calls to have the damaged parts removed and to replace them

with new parts. He said that he didn't know why the transformer exploded, nor did he know

whether anyone from Com Ed conducted an inquiry into the reasons for the explosion.

The trial court granted summary judgment in favor of Com Ed and, in a later order, found

that there was no just reason to delay enforcement or appeal of the grant of summary judgment

under Supreme Court Rule 304. 134 Ill. 2d. R. 304. Ryan therefore appealed.

II. ANALYSIS

Com Ed contends that it is protected against all liability for the accident under section 13-

214 of the Code of Civil Procedure, also referred to as the construction statute of repose. This is

the sole issue invoked by the parties in this appeal.[1]

Section 13-214 provides, in relevant part:

"No action based upon tort, contract or otherwise may be brought against any person for

an act or omission of such person in the design, planning, supervision, observation or

management of construction, or construction of an improvement to real property after 10

_____

[1] In their briefs, the parties also raise contentions regarding the products liability statute of

repose (753 ILCS 5/13-213 (West 2006)); however, the parties agreed at oral argument that this

statute was no longer at issue.

years have elapsed from the time of such act or omission." 735 ILCS 5/13-214(b) (West 2006).

This statute applies whenever (1) the product at issue is an improvement to real property and (2) the defendant's activities fall within those listed in the statute. *Adcock v. Montgomery Elevator Co.*, 274 Ill. App. 3d 519, 522, 654 N.E.2d 631, 633 (1995). Ryan does not dispute the fact that the electrical system set up by Com Ed is an improvement to real property, nor does he dispute the fact that it was designed and installed well over ten years ago. Rather, he argues that the second prong of the *Adcock* standard is not satisfied: i.e., he argues that the allegations in his complaint do not concern Com Ed's "design, planning, supervision, observation, or management" of the electrical system, but rather the ongoing maintenance duties undertaken by Com Ed as a supplier of power. Therefore, he contends that the construction statute of repose does not apply.

In examining these contentions, we are mindful that summary judgment is only proper where, "when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284, 769 N.E.2d 18, 19 (2002), citing 735 ILCS 5/2-1005(c) (West 2006). All evidence before the court is to be construed strictly against the moving party, and the motion should only be granted if the movant's right to judgment is clear and free from doubt. *Reed v. Bascon*, 124 Ill. 2d 386, 393, 530 N.E.2d 417, 420 (1988). Our standard of review of the trial court's entry of summary judgment is *de novo*. *General Casualty Insurance*, 199 Ill. 2d at 284, 769 N.E.2d at 19.

Statutes of repose "stem from a basic equity concept that a time should arrive, at some point, that a party is no longer responsible for a past act." W. Prosser et al., Torts ch. 12, at 607 (8th ed. 1988); see *Citgo Petroleum Co. v. McDermott International, Inc.*, 368 Ill. App. 3d 603, 607, 858 N.E.2d 563, 567 (2006); *MBA Enterprises, Inc. v. Northern Illinois Gas Co.*, 307 Ill. App. 3d 285, 288, 717 N.E.2d 849, 852 (3d Dist. 1999) (construction statute of repose "insulat[es] all parties in the construction process from the onerous task of defending against stale claims"). The construction statute of repose thus represents a legislative balancing act between the rights of persons harmed by allegedly faulty construction and the rights of those responsible for such construction; after the statutory period has passed, " 'the right to be free of stale claims comes to prevail over the right to prosecute them.' " *Ocasek v. City of Chicago*, 275 Ill. App. 3d 628, 633, 656 N.E.2d 44, 48 (1985), quoting *Cargill Ferrous International v. M/V Elikon*, 857 F.Supp. 45, 46 (N.D. Ill., 1994). When interpreting a statute of repose, courts must construe it liberally to fulfill the objectives it was designed for, yet they must not enlarge it beyond the legitimate intent of the legislature. *Ocasek*, 275 Ill. App. 3d at 633, 656 N.E.2d at 48.

1. Protective Scope of the Statute of Repose

Whether Com Ed can invoke the protection of the statute of repose to shield itself from Ryan's claims of negligent maintenance is currently in dispute among the appellate districts of this state. In *MBA Enterprises*, 307 Ill. App. 3d 285, 717 N.E.2d 849, the Third District found that an installer of a power system could be held liable for negligent maintenance of that system, notwithstanding the fact that the alleged defects originated during the installation of the system. In that case, plaintiff's property was damaged in a fire, and plaintiff sued the gas utility company

which had installed and maintained the gas piping system. Plaintiff's complaint alleged negligence in both installation and maintenance. The court held that the installation claims were barred by the construction statute of repose, but that the maintenance claims survived, because plaintiff had alleged that the gas utility company had violated an ongoing duty to operate the gas system in a safe manner. The court reasoned that, in applying the statute of repose, one must look at the activity being conducted rather than the status of the party involved. *MBA Enterprises*, 307 Ill. App. 3d at 287, 717 N.E.2d at 851, citing *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.*, 114 Ill. 2d 252, 500 N.E.2d 34, (1986); *Krueger v. A.P. Green Refractories Co.*, 283 Ill. App. 3d 300, 669 N.E.2d 947 (1996). Hence, the fact that a defendant is an installer will not shield him in his capacity as inspector and maintainer. *MBA Enterprises*, 307 Ill. App. 3d at 287, 717 N.E.2d at 851.

By contrast, cases in the First District have taken the position that the statute of repose protects an installer regardless of the fact that the installer has an independent duty to inspect and maintain the property at issue, if its breach of duty consists of the failure to discover and correct a design defect. See *O'Brien v. City of Chicago*, 285 Ill. App. 3d 864, 674 N.E.2d 927 (1996) and *Citgo*, 386 Ill. App. 3d 603, 858 N.E.2d 563. Both cases are factually similar to the case before us today.

In *O'Brien*, the plaintiff's decedent died in an automobile accident. Plaintiff sued the city, alleging that it negligently "operated, maintained, repaired, and altered" the road by failing to maintain a barrier across the median. *O'Brien*, 285 Ill. App. 3d at 870, 674 N.E.2d at 932. The court found that the plaintiff's claim was barred under the statute of repose, despite the fact that

her allegations were framed in terms of an independent duty by the city to inspect and maintain the roadway. The court reasoned that "[t]he crux of O'Brien's complaint is the dangerousness of the existing median *** and is a claim for defective design in a different form." *O'Brien*, 285 Ill. App. 3d at 870, 674 N.E.2d at 933.

*Citgo*, 368 Ill. App. 3d 603, 858 N.E.2d 563, involved a fire that broke out at a refinery. The third-party plaintiff in *Citgo* attempted to impose liability upon defendant Unocal under a negligence theory arising from Unocal's duty to inspect and maintain the refinery's piping equipment, which Unocal had installed. In its complaint, the third-party plaintiff alleged that Unocal's negligence in "inspection, maintenance, and operation of the refinery's piping equipment" was a contributing cause of the accident. *Citgo*, 368 Ill. App. 3d at 604, 858 N.E.2d at 564. The pipes at issue were alleged to have been installed when the refinery was constructed, over ten years before the filing of the complaint. Because of this fact, the court refused to give effect to the theory upon which the third-party complaint was framed, namely, breach of Unocal's duty to inspect and maintain, instead finding that the claims against Unocal were time-barred under the construction statute of repose. Although the court did not clearly delineate the scope of its holding, its broad language would seem to encompass any case where defendant designed the system at issue and the harm to plaintiff was in some way traceable to a flaw in that design, even when plaintiff did not allege fault in the design but rather in some other aspect of the defendant's activities that is not included in the language of section 13-214(b). The courts in *O'Brien* and *Citgo* are claiming, in effect, that they will not permit the other capacities in which the installer served to become the vehicle to eliminate the protection offered by the statute of

repose.

For the reasons that follow, we must give deference to the decision in *MBA Enterprises*, notwithstanding the policy arguments raised in the First District cases.

2. Activity-Status Distinction

As noted in *MBA Enterprises*, the statute of repose has clearly been held to protect activity rather than status. *MBA Enterprises*, 307 Ill. App. 3d at 287, 717 N.E.2d 849. Consequently, one must look to the specific activity in question rather than the fact that the negligence in inspection was perpetrated by the same party that installed the system in question. Not only is this interpretation in line with the language of the statute, but it is supported by ample case law.

In the seminal case of *Skinner*, our supreme court made clear that the statute of repose, for constitutional purposes, must consider the activity involved rather than the status of the defendant. *Skinner v. Anderson*, 38 Ill. 2d 455, 459, 231 N.E.2d 588, 590-91 (1967). The version of the statute of repose that existed at the time, unlike our current version, protected parties based on their status as design professionals: it applied to "*any person* performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property." Ill. Rev. Stat., ch. 83, par. 24f (1965) (emphasis added). The *Skinner* court found this status-based distinction to be arbitrary and thus unconstitutional, because it protected entities rather than the specific activities performed by those entities. *Skinner*, 38 Ill. 2d at 459, 231 N.E.2d at 590-91. The court explained:

"[T]he statute singles out the architect and the contractor, and grants them immunity. ***

> The arbitrary quality of the statute clearly appears when we consider that architects and contractors are not the only persons whose negligence in the construction of a building or other improvement may cause damage to property or injury to persons." *Skinner*, 38 Ill. 2d at 460, 231 N.E.2d at 591.

The *Skinner* court then went on to state that the statute would only reasonably fulfill the legislative purpose behind its enactment if "the benefits conferred upon [architects and contractors] are not denied to others similarly situated." *Skinner*, 38 Ill. 2d at 461, 231 N.E.2d at 591. It explained that it was irrational for an architect or a contractor to receive immunity under the statute of repose for performing an action while another party performing the exact same action would not be protected under the statute. *Skinner*, 38 Ill. 2d at 460, 231 N.E.2d at 591.

It was in response to the *Skinner* decision that the legislature re-drafted the construction statute of repose to create the version that exists today. See *State Farm Mutual Automobile Insurance Co. v. W.R. Grace & Co.*, 834 F.Supp 1052, 1058 (C.D. Ill. 1993). Consequently, in *Hellmuth*, our supreme court validated the current version of the statute of repose, which looked to specific activity rather than the status of the actor in defining the scope of protection under the statute. *Hellmuth*, 114 Ill. 2d 252, 500 N.E.2d 34. The court first reiterated the *Skinner* court's conclusion that the old version of the statute was irrational because it treated defendants differently based on their status, even if the suits against them were otherwise identical. It then went on to state: "The current statute, however, does not exclude persons based upon their status. It protects, on its face, anyone who engages in the enumerated *activities*. This court has given particular deference to legislative classifications when those classifications are based upon

activities rather than status." *Hellmuth*, 114 Ill. 2d at 261, 500 N.E.2d at 37. Based upon this interpretation, the court found the statute to be neither unreasonable nor arbitrary and thus upheld its constitutionality. *Hellmuth*, 114 Ill. 2d at 263, 500 N.E.2d at 38.

This activity-status distinction was applied by the Third District in *Krueger*. *Krueger*, 283 Ill. App. 3d 300, 669 N.E.2d 947. In *Krueger*, plaintiff sued an asbestos manufacturer, alleging that her deceased husband suffered injury as a result of being exposed to asbestos emanating from products sold and installed by the manufacturer. The manufacturer argued that it was protected from all liability by the construction statute of repose, since the products at issue had been installed over ten years ago. The court rejected this claim, stating:

"Although section 13-214(b) clearly applies to a party who installs an improvement, sales and distribution are not among the activities protected by the statute. *** [It] only applies to claims arising out of the construction related activities undertaken by the manufacturer or seller." *Krueger*, 283 Ill. App. 3d at 304, 669 N.E.2d at 950.

Accordingly, the court held that plaintiff's sales-related claims were not affected by the construction statute of repose, and it reversed the trial court's grant of summary judgment for the manufacturer. *Krueger*, 283 Ill. App. 3d at 304, 669 N.E.2d at 950. In concurring, Justice Slater explained that "[s]uch a holding is consistent with the idea that application of the statute does not depend on a person's *status* as a seller, manufacturer or distributor, but instead applies to the *activities* of design, planning, supervision, observation, management or construction." *Krueger*, 283 Ill. App. 3d at 306-07, 669 N.E.2d at 952 (Slater, J., concurring), citing *Hellmuth*, 114 Ill. 2d 252, 500 N.E.2d 34.

The distinction between activity and status articulated in *Hellmuth* and applied in *Krueger* was further recognized by the First District in *Risch*, which restated the fact that it is the defendant's activity which controls. *Risch v. Paul J. Krez Co.*, 287 Ill. App. 3d 194, 678 N.E.2d 44 (1997). In *Risch*, plaintiff sought to sue a contractor who was hired to install insulation; however, plaintiff sued the contractor not in his capacity as the installer, but in his capacity as its seller. The court acknowledged the validity of this distinction, citing *Krueger* for the proposition that "the construction statute of repose does not bar a plaintiff's suit against a defendant for that discrete portion of the defendant's activities not enumerated in the statute." *Risch*, 287 Ill. App. 3d at 198, 678 N.E.2d at 46, citing *Krueger*, 283 Ill. App. 3d 300, 669 N.E.2d 947. However, the court went on to find in that case that the defendant did not engage in sales activities that were independent from its performance as the insulation installer when it charged for materials and labor; rather, the charges for materials and labor were merely the means by which it charged for its installations. Nevertheless, *Risch* emphasized that under *Hellmuth*, the focus of analysis was on defendant's activities, and that separate sales activities could therefore be a source of liability even for an installer. *Risch*, 287 Ill. App. 3d at 198, 678 N.E.2d at 46. See also *Adcock*, 274 Ill. App. 3d at 523, 654 N.E.2d at 634 (finding that "[m]ere labels are not dispositive" in determining whether activity falls within statute of repose and therefore rejecting argument based on defendant's status).

The United States District Court likewise applied the activity-status distinction under Illinois law in *W.R. Grace*, 834 F.Supp at 1060. The court in *W.R. Grace* found that under the language of the statute of repose, as well as under the decision in *Hellmuth*, "manufacturers

receive protection from the statute of repose only if they are sued for on-site construction activities." *W.R. Grace*, 834 F.Supp at 1060. Thus, the court held that plaintiff's claims regarding defendant's manufacturing activities were not barred by the statute of repose, even though defendant also conducted construction activities that would presumably be protected under the statute. *W.R. Grace*, 834 F.Supp at 1060.

The reasoning of the foregoing decisions, in applying the analysis of our supreme court in *Skinner* and *Hellmuth*, compels the conclusion that, even though a design professional receives the protection of the statute of repose for design and installation-related activities, it does not receive protection for other activities that are not within the purview of the statute. Such other activities include manufacturing and sales, as well as breach of duty by one who undertakes inspection and maintenance duties, such as those involved in *MBA Enterprises* as well as in the case at bar. That is, if an installer of an improvement to real property violates a duty arising from its activity as an inspector, rather than its activity as an installer, then it can be held liable for breach of that duty regardless of the statute of repose. See *Hellmuth*, 114 Ill. 2d at 261, 500 N.E.2d at 37; *Risch*, 287 Ill. App. 3d at 198, 678 N.E.2d at 46. To hold otherwise would essentially dilute and abandon the analysis in *Skinner* and *Hellmuth* which applies the statute of repose to the specific acts of the defendant rather than his status. See *Skinner*, 38 Ill. 2d at 460, 231 N.E.2d at 591; *Hellmuth*, 114 Ill. 2d at 261, 500 N.E.2d at 37.

In the case at hand, there can be no question that Com Ed, just like the defendant in *MBA Enterprises*, had a specific duty to maintain its equipment. In point of fact, we note that this duty

No. 1-06-3309

derived from its capacity as the power supplier and not from its status as installer of the system.[2]

It is well established that power suppliers have an ongoing duty to inspect and maintain the equipment through which that power is transmitted. *Merlo v. Public Service Co.*, 381 Ill. 300, 312, 45 N.E.2d 665, 673 (1942) (speaking of the "required care in the transmission and distribution of electric current"); see also *O'Hara v. Central Illinois Light Co.*, 319 Ill. App. 336, 341, 49 N.E.2d 274, 275 (1943); *Le Maitre v. Union Electric Power Co.*, 331 Ill. App. 270, 273, 73 N.E.2d 125, 127 (1947) (defendant public utility "required to exercise reasonable care" in its provision of electricity).

In *O'Hara*, the court found that the defendant power company, by virtue of its duty to maintain and inspect its equipment, would be liable for negligence for improperly maintaining a resistor which would properly limit the high voltage entering a house. *O'Hara*, 319 Ill. App. at 341-42, 49 N.E.2d at 275. Likewise, if Ryan is correct in his allegation that Com Ed negligently failed to maintain the resistor leading to the circuit breaker that Ryan was fixing, thus transmitting a power flow hundreds of times in excess of the proper amount – breaching a duty which is independent from its status as the original installer of the equipment in question – then it could not look to the construction statute of repose for protection. Indeed, the parties at oral argument did not dispute the fact that if a third-party power supplier who was not involved in the installation of the power system committed negligence in the delivery of that power, it could be

_____

[2] During oral argument, in answer to inquiry from the bench, neither of the parties submitted that Com Ed's duties to inspect and maintain the equipment derived from any contractual agreement.

-16-

held liable for breach of that independent duty and would receive no protection from the construction statute of repose.

We note that the First District cases cited by Com Ed cursorily acknowledge that the statute of repose protects ability, not status, yet none of them pursue the inquiry as to whether a defendant's activities involving independent duties to inspect and maintain may be precluded by the statute of repose. Instead, they look only to the fact that a suit for negligent inspection or maintenance may be used as an expedient to overcome the protection of the statute of repose for defects in design and installation. These First District decisions reflect a concern that by supplying power and thus engendering a duty to inspect and maintain their equipment, power companies may strip themselves of the protection they would otherwise enjoy as installers and designers under the statute of repose. However, we are unable to surrender to such policy concerns in the face of the explicit language of the statute as well as the analysis and interpretation given under *Skinner*, *Hellmuth*, and *Risch* – which the First District cannot and does not purport to repudiate. See *Skinner*, 38 Ill. 2d 455, 231 N.E.2d 588; *Hellmuth*, 114 Ill. 2d 252, 500 N.E.2d 34; *Risch*, 287 Ill. App. 3d 194, 678 N.E.2d 44. The theory of recovery predicated upon Com Ed's alleged failure to discover and repair defects in its power system setup must be given its due as an activity that is not protected by the statute of repose, notwithstanding Com Ed's status as an installer of equipment. Extending that protection to such negligence would require legislative initiative consonant with the decisions of our supreme court in *Skinner* and *Hellmuth*.

Thus, we concur with the holding of the Third District in *MBA Enterprises* in finding that

No. 1-06-3309

Ryan's maintenance-related claims do not fall within the scope of the construction statute of repose as defined by the legislature, and thus we reverse the circuit court's grant of summary judgment to Com Ed.

Reversed and remanded for proceedings not inconsistent with this opinion.

McNULTY and O'MALLEY, JJ., concur.

| | |
|---|---|
| | **REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**<br>**(Front Sheet to be Attached to Each Case)** |
| Please use the following form | Daniel Ryan,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>Commonwealth Edison Company,<br><br>Defendant-Appellee,<br><br>High Voltage Maintenance Corp.,<br><br>Defendant. |
| Docket No.<br><br>COURT<br><br><br>Opinion Filed | No. <u>1-06-3309</u><br><br>Appellate Court of Illinois<br>First District, <u>SIXTH</u> Division<br><br><u>March 28, 2008</u><br>(Give month, day and year) |
| <br><br>JUSTICES | JUSTICE JOSEPH GORDON DELIVERED THE OPINION OF THE COURT:<br><br>  <u>McNulty and O'Malley, JJ.</u>  , concur. |
| APPEAL from the Circuit Court of Cook County; the Hon___ Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin:<br><br>Appeal from the Circuit Court of Cook County.<br><br>The Hon. <u>Bill Taylor</u> Judge Presiding. |
| <br><br><br><br>APPELLANTS:<br>John Doe, of Chicago | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br><u>APPELLANT: Daniel B. Malone, The Healy Law Firm, 111 West Washington Street, Suite 1425, Chicago, Illinois 60602</u> |
| For APPELLEES, Smith and Smith of Chicago | <u>APPELLEES: David E. Neumeister, Jennifer L. Medenwald, Querrey & Harrow, Ltd., 175 West Jackson Blvd., Suite 1600, Chicago, IL 60604</u> |

| | |
|---|---|
| Add attorneys for 3rd party appellants and/or appellees. | |