FOURTH DIVISION

April 29, 1999

No. 1-98-3496

SWANN & WEISKOPF, LTD., )  APPEAL FROM THE 

)  CIRCUIT COURT OF

Plaintiff-Appellant, )  COOK COUNTY.

)

v. )  95 L 2659

)

MEED ASSOCIATES, INC., an Illinois )

corporation, )  HONORABLE

)  KENNETH L. GILLIS,

Defendant-Appellee. )  JUDGE PRESIDING.

JUSTICE WOLFSON delivered the opinion of the court:

Confronted with the claim that its contribution counts were barred by the statute of limitations, Swann & Weiskopf, Ltd. (Swann) offers two reasons why its action against Meed Associates, Inc. (Meed) should survive--the discovery rule and the equitable estoppel doctrine.  Neither works.  We affirm the trial court's order granting summary judgment to Meed.

FACTS

In 1985, Swann agreed to provide design services for S.B. Holdings at the Libertyville Manor Extended Care Facility.  Swann subcontracted Bernard Orzechowski (Orzechowski) and his company, Meed, to design a storm water removal system for the Libertyville project.

In 1998, Swann's project manager Jim Leyden (Leyden) testified at a deposition.  Leyden said:

Swann had hired Meed on several occasions, and contacted Meed for civil engineering on the project because, "Meed 

Associates performed high-quality engineering work."  Meed's work included designing the "mechanical, plumbing and storm water retention" systems.

Shortly after the project was completed in 1989, S.B. Holdings notified Swann of the project's flooding problems.  Swann dispatched Leyden and Orzechowski to investigate, and Orzechowski concluded earth mounds around the project site contributed to the flooding problems.  When asked if he agreed with Orzechowski's opinion, Leyden responded:

"Meed Associates knew the location of the earth mounds.  It was brought to their attention as per our site plan and also on some *** previous correspondence that we've talked about between the Village of Libertyville and Meed Associates.

[Orzechowski] was required to include the calculations for water retention from any contributory area off of those earth mounds.  That much I do know."

"[O]n or about October 12 of '89," Swann learned S.B. Holdings had hired an engineering firm, Albert Halff Associates (Halff), who "*** was questioning the design of the storm water removal system ***."  In an October 12, 1989, letter, from Halff to S.B. Holdings, which Swann representatives read that month, Halff was "critical" of Meed's design of the storm water removal system.  Halff concluded the eight-inch storm water pipe shown in the plans was insufficient to handle storm water at the project site.

Orzechowski responded to Halff's October 12, 1989, letter with a December 14, 1989, letter to Swann:

"1. Storm water sewer sizes, slopes and materials meet  all governing code requirements, at time of              original plan and permit submittals.

2. Storm water retention was in compliance with all      governing codes at the time of original plan and         permit submittals.

3. Flooding problem [at the project site] was as a       result of the earth mound ***.  The earth mound          resulted in the creation of rerouted storm water         flow and possible blockage of water flow in the          storm sewer system, due to soil erosion."

On April 18, 1990, S.B. Holdings filed a complaint against Swann in Lake County Circuit Court, alleging the storm water removal system was defectively designed.  S.B. Holdings and Swann chose to arbitrate their case.

At a February 15, 1991, arbitration hearing, attorneys for S.B. Holdings and Swann discussed the design of the storm water removal system.  According to S.B. Holdings' attorney, "The issues presented, however, in the claim are more directed towards the design of that [storm water removal] system than they are in the actual construction of that system."  When asked by an arbitrator to summarize the issues in the case, S.B. Holdings' attorney repeated: "There is an issue related to the design of the storm water retention system ***."  Swann's attorney, of course, was present.

During the arbitration case, Orzechowski assisted Swann and its independent engineering expert Kathleen Rafter (Rafter).  The record does not reveal when Swann retained Rafter.  Orzechowski still defended the design of the storm water removal system and his earth mound theory explaining the flooding problems.  But Orzechowski subsequently retreated from his earlier opinions.

In a 1998 deposition, Orzechowski testified:

Around March 12, 1994, Orzechowski spoke with Swann's attorney and mentioned he and Rafter had discovered a defect in his design of the storm water removal system.

"The inadequacy of the sewer size was something that [Rafter] and myself, I'd say, discovered at the same time.

Before that we had no reason to believe or--my assumption was that the initial flooding was as a result of this improper--the state just wasn't the same.  It was not as per the plans.  This [earth] mound in my mind was the contributing factor until I heard differently ***."

Before Rafter discovered his design defect, Orzechowski believed "*** the system designed was installed as per plan and was adequate."  After Rafter's conclusions, Orzechowski acknowledged "*** certain portions of the storm water removal system were inadequately sized[.]"

In July 1994, the arbitration panel ordered Swann to pay $477,239 to S.B. Holdings to remedy the flooding problem.  On February 21, 1995, Swann filed a "Complaint for Contribution" against Meed.  Meed responded with an affirmative defense based on the limitations period.  Swann filed an amended complaint, adding a breach of contract count to its contribution count.  Meed filed a summary judgment motion, again based on the limitations period.  Swann responded, arguing the discovery rule and the estoppel doctrine saved its complaint from a limitations period defense.  On August 17, 1998, the trial court granted summary judgment to Meed.  This appeal followed.

DECISION

Summary judgment is appropriate if the record shows "*** that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 1994).  Summary judgment "*** is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt."  
Loyola Academy v. S&S Roof Maintenance, Inc.
, 146 Ill. 2d 263, 271, 586 N.E.2d 1211 (1992)(citing 
Purtill v. Hess
, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986)).  The trial court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the non-moving party.  
Loyola Academy
, 146 Ill. 2d at 271.

We review 
de
 
novo
 the trial court's decision to grant summary judgment.  
LaSalle National Bank v. Skidmore, Owings & Merrill
, 262 Ill. App. 3d 899, 902, 635 N.E.2d 564 (1994).

Swann makes two contentions.  First, Swann contends its complaint was filed within the limitations period because it did not discover its claim against Meed until Orzechowski acknowledged a design defect in March, 1994.  Second, Swann contends even if it did not file its complaint within the limitations period, Meed is estopped from raising a limitations period defense.

1.  Discovery Rule

Section 13-204(b) of the Civil Practice Law provides:

"In instances where an underlying action has been filed by claimant, no action for contribution or indemnity may be commenced more than 2 years after the party seeking contribution or indemnity has been served with process in the underlying action or more than 2 years from the time the party, or his or her privy, knew or should reasonably have known of an act or omission giving rise to the action for contribution or indemnity, whichever period expires later."  735 ILCS 5/13-204(b) (West 1994).

Section 13-214(a) of the Civil Practice Law provides:

"Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action *** knew or should reasonably have known of such act or omission."  735 ILCS 5/13-214(a) (West 1994).

Swann's amended complaint contains two-counts: Count I--

"Contribution"--and Count II--"Breach of Contract."  Section 13-

204(b)'s two-year statute of limitations applies to Count I, and section 13-214(a)'s four-year statute of limitations applies to Count II.  We will analyze the four-year limitations period in section 13-214(a) first, because if Swann's complaint was time-

barred under the longer period, it also was time-barred under the shorter period.

Section 13-214(a) contains the "discovery rule," which tolls the statute of limitations until the plaintiff knows or reasonably should know it has been injured and that this injury was wrongfully caused.  See 
Knox College v. Celotex Corp.
, 88 Ill. 2d 407, 415, 430 N.E.2d 976 (1981); 
County of DuPage v. Graham, Anderson, Probst & White, Inc.
, 109 Ill. 2d 143, 153-54, 485 N.E.2d 1076 (1985).  At that point, the plaintiff has an obligation to conduct further inquiries to determine whether it has an actionable claim.  
Nolan v. Johns-Manville Asbestos
, 85 Ill. 2d 161, 171, 421 N.E.2d 864 (1981).  
Ordinarily, the date when the plaintiff has or should have the requisite knowledge to trigger the limitations period is a question of fact.  
Jackson Jordan, Inc. v. Leydig, Voit & Mayer
, 158 Ill. 2d 240, 250, 633 N.E.2d 627 (1994).

But determining when the plaintiff possesses enough knowledge may be a question of law.  
Henderson v. Jones Brothers Construction Corp.
, 234 Ill. App. 3d 871, 873, 602 N.E.2d 16 (1992).
  "Summary judgment on statute of limitations grounds is appropriate in the face of a plaintiff's assertion that the discovery rule applies only where it is apparent from the undisputed facts that the plaintiff knew or reasonably should have known of the injury and its wrongful causation ***" within the limitations period.  
Hochbaum v. Casiano
, 292 Ill. App. 3d 589, 593-94, 686 N.E.2d 626 (1997).  In other words, summary judgment should be granted only "*** if two conditions are met: the facts known by the plaintiff are not in dispute, and only one conclusion can be drawn from them."  
Skidmore, Owings & Merrill
, 262 Ill. App. 3d at 903.  These two conditions are met in this case.

First, the facts known by Swann are not disputed.  Swann learned of the project's flooding problems in October 1989 when S.B. Holdings contacted Swann representatives and when Swann representatives read Halff's October 12, 1989, letter to S.B. Holdings.  S.B. Holdings filed a complaint against Swann on April 18, 1990, alleging the storm water removal system was defectively designed.  And at a February 15, 1991, arbitration hearing on S.B. Holdings' complaint, S.B. Holdings' attorney identified the issues, including the design of the storm water removal system.

These facts clearly show Swann discovered Meed's potentially actionable conduct more than once between October 1989 and February 15, 1991.  S.B. Holdings' initial contact, Halff's letter, S.B. Holdings' complaint, or the arbitration hearing each constituted
 "*** direct evidence or admissions of actionable conduct *** which activated the discovery period."  
Skidmore, Owings & Merrill
, 262 Ill. App. 3d at 906.  See 
Washington Courte Condominium Ass'n-Four v. Washington-Golf Corp.
, 267 Ill. App. 3d 790, 830, 643 N.E.2d 199 (1994)(limitation period against subcontractor began to run when general contractors "were aware of water problems" and notified subcontractor); 
Board of Library Directors v. Skidmore, Owings & Merrill
, 215 Ill. App. 3d 69, 74-

75, 574 N.E.2d 869 (1991)(limitations period against subcontractor began to run when general contractor learned of water problem from architect).

On the discovery rule issue, we find the case before us similar to 
AXIA, Inc. v. I.C. Harbour Construction Co.
, 150 Ill. App. 3d 645, 501 N.E.2d 1339 (1986).  In 
AXIA
, an office building began to leak shortly after completion in 1978.  Within a year of completion, the building owner notified both the architect and the general contractor of the leaks.  In 1983, the building owner hired a consultant to determine the cause of the leaks, and the consultant indicated design and construction deficiencies contributed to the leaks.  The building owner sent copies of the consultant's report to the architect and the general contractor.  The building owner filed a complaint in 1984, and the trial court dismissed its complaint as time-barred.

On appeal, the court held the building owner "*** possessed the requisite amount of information necessary to further inquire whether the problem was actionable ***" when it notified the general contractor of the leaks in 1978.  
AXIA
, 150 Ill. App. 3d at 651.  Here, Swann possessed enough information "to inquire further" about Meed's allegedly defective design as early as October 1989, when Swann sent Leyden and Orzechowski to investigate the flooding problems.

Second, the facts show Swann failed to file its complaint within four years from the date it discovered Meed may have wrongfully caused its injury.  Swann filed its first complaint against Meed on February 21, 1995, more than four years after the latest conceivable discovery date: the arbitration hearing summarizing the issues to include Meed's design of the storm water removal system.

We bear in mind this is a case where Swann sought from Meed only the amount of money it had been ordered to pay S.B. Holdings at the arbitration hearing.  The claim of S.B. Holdings was based entirely on Orzechowski's defective design.  If the design were not defective, Swann would not owe any money to S.B. Holdings.  Under these circumstances, Swann had ample notice in 1989, 1990, and early 1991 of the desirability of filing its claim against Meed.  Swann simply chose to ignore that notice.

Once Meed introduced sufficient evidence which, if uncontradicted, would entitle it to judgment as a matter of law, Swann then had to allege or present some facts that would create a fact issue concerning the date of discovery.  See 
Freeport Memorial Hospital v. Lankton, Ziegele, Terry & Associates, Inc.
, 170 Ill. App. 3d 531, 537-38, 525 N.E.2d 194 (1988).  While there is no need for Swann to prove its case at the summary judgment stage, given Meed's allegations and evidence, Swann was "*** required to present some factual basis that would arguably entitle [it] to a judgment in [its] favor."  
Flint v. Court Appointed Special Advocates of DuPage County, Inc.
, 285 Ill. App. 3d 152, 162, 674 N.E.2d 831 (1996).  Swann did not do that, and the discovery rule cannot save its complaint from the limitations period.  Swann's complaint is time-barred.

2.  Equitable Estoppel Doctrine

However, Swann contends the doctrine of equitable estoppel saves its complaint, even if the discovery rule cannot.

Equitable estoppel, in this context, prevents the defendant from employing a limitations period defense when the plaintiff reasonably relied on the defendant's words or conduct in delaying its complaint and the plaintiff suffered injury as a result of its reliance on the defendant's words or conduct.  
Senior Housing, Inc. v. Nakawatase, Rutkowski, Wyns & Yi, Inc.
, 192 Ill. App. 3d 766, 771, 549 N.E.2d 604 (1989).  "Although there is ordinarily no duty to apprise an adversary of his rights, one cannot justly or equitably lull his adversary into a false sense of security, causing him to subject his claim to the bar of the statute, and then plead the very delay caused by his course of conduct."  
Beynon Building Corp. v. National Guardian Life Insurance Co.
, 118 Ill. App. 3d 754, 763, 455 N.E.2d 246 (1983).

The defendant's words or conduct need not be intentionally fraudulent, misleading, or deceptive.  
York v. Village of Wilmette
, 148 Ill. App. 3d 108, 116-17, 498 N.E.2d 712 (1986).  Instead, this court must rely on 
less legal, more equitable concepts of "conscience and duty of honest dealing" in determining if the defendant's words or conduct should deny it the right to assert a limitations period defense.  
York
, 148 Ill. App. 3d at 117.

"*** [T]he essential question presented is whether [the] plaintiff demonstrated that the words or actions of the defendant[] induced [the] plaintiff to reasonably rely to its detriment by failing to timely file this lawsuit."  
AXIA
, 150 Ill. App. 3d at 653.  In other words, we must decide whether we can say as a matter of law that Swann's purported reliance on Orzechowski's earth mound theory--in the face of S.B. Holdings' initial contact, Halff's letter, S.B. Holdings' complaint, and the arbitration--was unreasonable.

"The party asserting the estoppel must have relied on the act or representation and 
because of that reliance refrained from commencing an action within the limitations period
."  (Emphasis added.)  
York
, 148 Ill. App. 3d at 117.

Here the record contains no evidence Swann withheld its complaint purely out of reliance on Orzechowski's earth mound theory.  Although Orzechowski denied responsibility, asserting his earth mound theory to explain the flooding problems, Leyden testified Swann held Meed responsible for flooding problems based on the earth mounds: "[Orzechowski] was required to include the calculations for water retention from any contributory area off of those earth mounds."

The record does not indicate the date Swann hired Rafter, but Swann's reliance on Orzechowski decreased when it consulted an independent engineering expert.  And when Orzechowski finally conceded his design was defective in March 1994, Swann did not file its complaint for almost a year.  See 
Schiller v. Kucara
, 55 Ill. App. 2d 9, 20, 203 N.E.2d 710 (1964)(equity aids the diligent, not the indolent).  That is not being lulled into a false sense of security, it is ignoring one's own rights beyond the point of somnolence.  See 
Butler v. Mayer, Brown & Platt
, 301 Ill. App. 3d 919, 925-26, 704 N.E.2d 740 (1998).  

Swann has failed to present any evidence of its reliance on Orzechowski's earth mound theory and protestations of innocence.  Only one inference can be drawn--there is no equitable estoppel in this case.  Swann's complaint against Meed was time-barred.  

CONCLUSION

Neither the discovery rule nor the estoppel doctrine saves Swann's complaint from section 13-214(a)'s limitations period.  Swann's complaint was time-barred, and summary judgement was appropriate.

Affirmed.

     South, P.J., and Hoffman, J., concur.