# Illinois Official Reports

## Appellate Court

---

*M&S Industrial Co. v. Allahverdi*, 2018 IL App (1st) 172028

---

| | |
|---|---|
| Appellate Court Caption | M&S INDUSTRIAL CO., INC., Plaintiff-Appellant, v. FRED ALLAHVERDI, d/b/a Pars Auto Repair, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-17-2028 |
| Filed<br>Rehearing denied | August 9, 2018<br>September 12, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-8359; the Hon. John P. Callahan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert J. Augenlicht and Michael O. Kurtz, of Chicago, for appellant.<br><br>Maisel & Associates, of Naperville (Anthony J. Ritrovato, of counsel), for appellee. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices McBride and Gordon concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiff M&S Industrial Co., Inc. (M&S), appeals the dismissal of its complaint against defendant Fred Allahverdi arising out of injuries sustained when the roof of Allahverdi's building uplifted during a wind storm and struck nearby power lines, resulting in an electrical surge that damaged M&S's property. The circuit court dismissed the complaint on grounds that M&S's claim was barred by the statute of limitations applicable to construction negligence (735 ILCS 5/13-214(a) (West 2012)). Based on our determination that section 13-214(a) of the Code of Civil Procedure (Code) applies to M&S's claim and that, as a matter of law, the four-year limitations period expired before M&S filed suit, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3        M&S filed its initial complaint on August 14, 2015. M&S alleged that Allahverdi operated an automobile sales and service business on his property and that he or his employees negligently left a large overhead dock door open during unsafe weather conditions—severely high winds—in Chicago on October 27, 2010. Due to the high winds, a portion of the roof of Allahverdi's building detached and struck nearby power lines that serviced M&S's building. M&S alleged that the resulting electrical surge damaged M&S's property, namely, computer numerical control machines, which M&S uses to manufacture sophisticated metal components for the defense industry.

¶ 4        M&S later filed a second amended complaint that alleged in pertinent part:

"4. On October 27, 2010, ALLAHVERDI was personally aware of a significant and hazardous structural defect present on the *** location, to wit: an improperly installed and maintained roof which was not structurally sound, not constructed in accordance with industry standards and not attached to the main structure of the building. ALLAHVERDI's knowledge was based on his role as a contractor in the construction of the structure at the *** location, when and where the roof was built.

***

6. On October 27, 2010, in the middle of this windstorm and despite the dangerous wind conditions, employees of ALLAHVERDI left a large overhead dock door on the *** location open to the exterior environment.

7. As a result of this opening exposing the interior of the *** location to the windstorm and the inability of the roof to resist uplift forces because it was improperly installed and maintained, not constructed in accordance with industry standards, and not attached to the main structure, a portion of the building's roof detached from the building and struck a nearby power supply line ***."

¶ 5        In addition, the complaint alleged that Allahverdi "owed a duty of care to exercise ordinary care to avoid injury and damage" and to "mitigate unsafe conditions on the property" and he breached this duty

"a. By failing to replace the structurally unsound roof, and/or

b. By failing to secure the roof to the main structure of the building; and/or

c. By allowing the roof of the property *** to be installed and maintained in such dangerous condition."

¶ 6 Alternatively, the complaint pled that Allahverdi owed a duty of care under the building code regulations and breached this duty. The complaint alleged that, as a result of the occurrence, Allahverdi was issued a citation for building code violations by the City of Chicago on October 28, 2010.

¶ 7 Allahverdi filed a motion under section 2-619 of the Code (*id.* § 2-619) to dismiss the second amended complaint asserting that causation was too attenuated to be foreseeable. The circuit court granted this motion with prejudice.

¶ 8 M&S filed a motion to reconsider and vacate the dismissal. The parties submitted additional briefing and supplemental authority. M&S filed the affidavit and report of Dennis McCann, an engineering consultant hired by M&S in March 2016 to perform an engineering analysis of the roof of Allahverdi's building. McCann averred that he inspected the interior of Allahverdi's roof on March 26, 2016. McCann averred that the deck panels of the roof were not attached to the steel roof joists of the building, in violation of building code requirements, and that, had the roof been attached properly, it should have been able to resist the strong winds on October 27, 2010. Further, McCann averred that the defects he observed were not readily observable except upon close inspection.

¶ 9 In Allahverdi's response, he asserted, *inter alia*, that plaintiff's second amended complaint was barred by the four-year statute of limitations applicable to claims of construction negligence (*id.* § 13-214(a)).

¶ 10 In its reply, M&S argued that the motion to dismiss should be denied as it involved questions of fact and section 13-214(a) did not apply because it was not raising a claim of construction negligence. Rather, it was suing Allahverdi for maintaining a hazardous condition on his land of which Allahverdi was aware. Alternatively, M&S argued that the discovery rule applied to toll the construction statute of limitations because it could not have discovered the defective roof until it hired McCann in March 2016 to examine Allahverdi's building using a scissor lift and high-intensity lights.

¶ 11 Following a hearing April 12, 2017, the circuit court allowed submission of additional materials and permitted Allahverdi to amend his prior motion to dismiss to add a statute of limitations argument under 2-619(a)(5) of the Code based on section 13-214(a). Allahverdi contended that the discovery rule did not apply because the alleged injury was caused by a sudden, traumatic event—the windstorm that blew the roof onto the power lines—and thus the claim accrued on October 27, 2010.

¶ 12 After oral arguments on July 19, 2017, the circuit court entered an order granting both M&S's motion to reconsider and Allahverdi's amended motion to dismiss under section 2-619(a)(5). The court held that M&S's claim was a construction negligence claim and section 13-214(a) applied. It further held that the injury sustained was a sudden traumatic event placing M&S on notice of a cause of action as of October 27, 2010, and that the discovery rule did not apply. The court dismissed the second amended complaint with prejudice. M&S filed a timely notice of appeal.

¶ 13                                    II. ANALYSIS
¶ 14                                A. Standard of Review
¶ 15 Whether a claim is barred by the statute of limitations "is a matter properly raised by a section 2-619 motion to dismiss." *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352

(2008). When reviewing a 2-619 motion to dismiss, we "must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party" and take as true all well-pleaded facts and reasonable inferences derived therefrom. *Id.* "It is well settled that our review of a section 2-619 dismissal is *de novo*." *Id.* Similarly, "[t]he applicability of a statute of limitations to a cause of action presents a legal question we review *de novo*." *Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461, 466 (2008).

¶ 16                    B. Construction Negligence Statute of Limitations

¶ 17        M&S maintains on appeal that the circuit court erred in holding that section 13-214(a) applies because its claim sounds in premises liability, not construction negligence. M&S asserts that its complaint sought to hold Allahverdi liable based on a landowner's duty to exercise reasonable care to prevent and mitigate dangerous conditions on his property and alleged that he was aware of the dangerous condition—the improperly attached roof—because he served as a contractor in the construction of the roof and he breached his duty by failing to fix the dangerous condition and/or failed to maintain his property in accordance with the Chicago Building Code.

¶ 18        Allahverdi contends that the trial court correctly applied section 13-214(a), as M&S's claims are all based on the initial construction of the roof and his activity as the contractor and installer, despite M&S's attempts to plead around construction negligence. Allahverdi argues that application of section 13-214(a) depends not on the status of the defendant as property owner or construction professional but upon the activity of the defendant.

¶ 19        Section 13-214(a) provides:

> "(a) Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." 735 ILCS 5/13-214(a) (West 2012).[1]

¶ 20        "[O]ur supreme court has held that the four-year statute of limitations relating to construction matters protects only certain enumerated activities, specifically, 'the design, planning, supervision, observation or management of construction.' " *15th Place Condominium Ass'n v. South Campus Development Team, LLC*, 2014 IL App (1st) 122292, ¶ 48 (quoting *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.*, 114 Ill. 2d 252, 259 (1986)).

¶ 21        Our courts have explained that section 13-214 is meant to "protect activity rather than status." *Ryan v. Commonwealth Edison Co.*, 381 Ill. App. 3d 877, 885 (2008) (interpreting section 13-214(b)). "[O]ne must look to the specific activity in question rather than" the status of the defendant in determining application of the statute. *Id.* (citing *Skinner v. Anderson*, 38

---

[1]We note that many of the cases cited by the parties and discussed below involve interpretation of section 13-214(b), the construction statute of repose, which contains identical language, *i.e.*, "in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property." 735 5/13-214(b) (West 2012). "[B]ecause of the identical language in sections 13-214(a) and 13-214(b), the cases concerning section 13-214(b) are pertinent to this issue." *Morietta v. Reese Construction Co.*, 347 Ill. App. 3d 1077, 1081 (2004).

Ill. 2d 459 (1967)). "It is not enough that the party seeking the protection of the statute is a landowner. [Citation.] A landowner is only protected by the statute if he or she engages in the enumerated activities." *Trtanj v. City of Granite City*, 379 Ill. App. 3d 795, 801 (2008).

¶ 22    In *Ryan*, the plaintiff challenged the grant of summary judgment for the defendant electrical utility company, contending that section 13-214(b) was inapplicable to his claim. *Ryan*, 381 Ill. App. 3d at 882. The plaintiff alleged that the defendant negligently failed to perform its ongoing maintenance duties, which increased the severity of an explosion that injured the plaintiff while he was performing maintenance work on a circuit breaker. *Id.* at 878-79. The defendant had installed and set up the electrical system over 10 years before the accident. *Id.* at 882. The plaintiff contended that section 13-214(b) did not apply because the defendant's ongoing maintenance duties as a supplier of power were at issue, and not the "design, planning, supervision, observation, or management" of the electrical system. (Internal quotation marks omitted.) *Id.* This court held that

> "even though a design professional receives the protection of the statute of repose for design and installation-related activities, it does not receive protection for other activities that are not within the purview of the statute. Such other activities include manufacturing and sales, as well as breach of duty by one who undertakes inspection and maintenance duties ***." *Id.* at 887.

The *Ryan* court held that the defendant electric company "had a specific duty to maintain its equipment," which derived "from its capacity as the power supplier and not from its status as installer of the system." *Id.* at 888. Although the defendant electric company installed the system, the court recognized that the theory of recovery was predicated upon its alleged failure to discover and repair defects in its power system as the supplier, and these maintenance-related claims did not fall within the scope of the construction statute of repose. *Id.* at 889.

¶ 23    In support, the *Ryan* court cited with approval the Third District case *MBA Enterprises, Inc. v. Northern Illinois Gas Co.*, 307 Ill. App. 3d 285 (1999). There, the plaintiff alleged that a defect in the original design and construction of a gas pipe led to an explosion and the pipe system had been constructed more than 10 years prior; the plaintiff alleged that the defendant gas company negligently inspected, operated, and maintained the defective pipe system, which it used on a daily basis to sell and supply gas to the hotel where the explosion occurred. *Id.* at 286-87. The court concluded that the gas company, as a supplier that operated the system daily in order to provide a utility service involving a dangerous commodity to the plaintiff, was under an "ongoing duty of care to operate and maintain the gas system in a safe manner." *Id.* at 288 (citing *Metz v. Central Illinois Electric & Gas Co.*, 32 Ill. 2d 446 (1965) (gas is a dangerous commodity and those who handle it must exercise a commensurate level of care)). The court found the construction-related claims were barred by section 13-214(b), but the plaintiff's negligent maintenance claims survived, as the plaintiff alleged that the gas company violated an ongoing duty to operate the gas system in a safe manner. *Id.* at 287-90.

¶ 24    On appeal, M&S relies on *Ryan* and *MBA Enterprises* and attempts to distinguish two First District cases that Allahverdi cites on appeal and which the *Ryan* court criticized: *O'Brien v. City of Chicago*, 285 Ill. App. 3d 864 (1996), and *CITGO Petroleum Corp. v. McDermott International, Inc.*, 368 Ill. App. 3d 603 (2006). In *O'Brien*, a fatal accident occurred involving a median. The court found that the defendant city engineered and designed the reconstruction of the roadway, and this qualified as an "improvement" within the meaning of section

13-214(b). *O'Brien*, 285 Ill. App. 3d at 869. The plaintiff argued that section 13-214(b) did not apply because it was not claiming defective design, but, rather, that the defendant negligently operated, maintained, repaired, and altered the median and failed to alleviate the dangerous condition in negligently maintaining the " 'existing barrierless median.' " *Id.* at 870. This court held that the claim was, in essence, a design defect claim that the defendant "created and maintained a dangerous condition," *i.e.*, the existing median. *Id.* The plaintiff did not allege that the defendant had taken any recent affirmative action that increased the dangerousness of the roadway but that it failed to correct a dangerous condition it created in the reconstruction project, which had occurred more than 10 years prior. *Id.* Thus, the claim was barred by the construction statute of repose. *Id.*

¶ 25    In *CITGO*, 368 Ill. App. 3d at 604, the third-party pipefitting manufacturer plaintiff brought a claim for negligent maintenance, inspection, and operation of an oil refinery where a fire occurred against the former owner of the refinery. The defendant had installed the pipes at issue more than 10 years before, when the refinery was constructed. *Id.* The court held that because the plaintiff's allegations of negligent maintenance of the piping system were based on defective pipefitting that was allegedly installed when the refinery was constructed, the claim was barred by section 13-214(b). *Id.* at 609. The court in *CITGO* criticized *MBA Enterprises* on grounds that it carved "out an exception that was not intended when the legislature enacted the statute" and, although the plaintiff's claims in *MBA Enterprises* were fashioned as "failure to maintain" claims, they were essentially based on a defective product installed at the time the gas system was constructed. *Id.*

¶ 26    The *Ryan* court criticized *O'Brien* and *CITGO* on grounds that they protected "an installer regardless of the fact that the installer has an independent duty to inspect and maintain the property at issue, if its breach of duty consists of the failure to discover and correct a design defect." *Ryan*, 381 Ill. App. 3d at 883-84. In relying on *Ryan* and *MBA Enterprises* on appeal, M&S contends that a landowner can be independently liable for negligent maintenance of a dangerous condition even if the landowner participated in construction of defective improvements to property. We conclude that the present case is distinguishable from *MBA Enterprises* and *Ryan*. Both cases involved utility suppliers of hazardous substances that, in addition to their duties as installers, also had heightened and ongoing duties to inspect and maintain the equipment through which they sold and transmitted their utilities daily. As the *Ryan* court specifically observed, "[i]t is well established that power suppliers have an ongoing duty to inspect and maintain the equipment through which that power is transmitted." *Id.* at 888. The duty of care to safely inspect and maintain their equipment imposed on the utilities stemmed from their role as a utility supplier using equipment to deliver the product, and not from its status as the original installer of the piping system.

¶ 27    Here, in contrast, M&S's claim involves a defectively constructed roof, a single event that does not entail the daily provision of a dangerous utility to a customer. Much like in *O'Brien* and *CITGO*, M&S's claim is, at its core, a claim of defect in design and construction, regardless of how M&S characterizes Allahverdi's acts and omissions. A review of M&S's amended complaint, supporting documents, and arguments before the circuit court demonstrates that M&S focuses on Allahverdi's acts in construction of the roof. M&S's amended complaint alleged that Allahverdi was aware of the "improperly installed and maintained roof which was not structurally sound, not constructed in accordance with industry standards and not attached to the main structure of the building. Allahverdi's knowledge was

based on his role as a contractor in the construction of the structure ***." M&S alleged that, as a result of the "improperly installed and maintained" roof, which was "not constructed in accordance with industry standards, and not attached to the main structure," the roof detached during the wind storm. M&S alleged that Allahverdi failed to replace the unsound roof, secure it to the structure, and allowed the roof to be installed and maintained in a dangerous condition.

¶ 28    The report and affidavit of plaintiff's expert McCann echoes these allegations. M&S argued before the circuit court that the cause "was what I just read in [McCann's] report *** that the negligence was the failure to attach and maintain that roof properly in violation of the building code and in violation of the building standards." M&S observed that the report also identified differences between Allahverdi's roof "as-constructed" and the architectural drawings, observing that there was

> "no record of design changes approved by the architect in the permit file suggesting that these chang[es] were made during construction. The combination of unapproved design changes, building permit file which contained a building violation notice requiring the owner to post the name of the general contractor, and leftover building materials at the site suggests that the owner may have acted as general contractor for construction of the subject building. It is likely that many of the observed deficiencies are a result of an inexperienced owner acting as a general contractor or self performing work."

¶ 29    M&S argued before the circuit court that "the negligence was the failure to properly maintain a roof that the defendant knew was not attached. If he had corrected the failure to attach the roof at any time prior to this accident, again, we wouldn't be here." M&S asserted that the opening of the dock door was "the precipitating event, but it was not the cause. The cause was what I just read in the report *** that the negligence was the failure to attach and maintain that roof properly in violation of the building code and in violation of the building standards." M&S reiterated that opening the dock door "was not the negligent act that's been alleged in the complaint" and that Allahverdi "has never responded to the assertion that it was the failure to attach the roof that was the negligent act."

¶ 30    M&S's various assertions that Allahverdi failed to "maintain" the roof amount to different permutations of the same fundamental claim: that Allahverdi initially improperly constructed the roof. M&S's bare allegation that Allahverdi failed to "maintain" the roof is unsupported by further fact allegations. The amended complaint does not indicate that Allahverdi subsequently made attempts to maintain or repair the roof after its initial construction. M&S's amended complaint clearly alleged that Allahverdi actually participated in the construction of the improvement (the roof) and that this faulty construction was to blame for the roof uplifting in the wind. As such, M&S's claim encompasses the activities set forth in section 13-214(a).

¶ 31    In determining that section 13-214(a) applies to M&S's claim, we note that Allahverdi cites *Wright v. Board of Education of the City of Chicago*, 335 Ill. App. 3d 948 (2002), on appeal. In *Wright*, 335 Ill. App. 3d at 949-50, the plaintiff sued after tripping on a step at a school that was built decades before and that had remained unchanged. The court found the plaintiff's negligence action was barred by the construction statute of repose, as the school did not have any ongoing duties to maintain or repair the step by redesigning or reconstructing it to comply with current code and it was not in disrepair. *Id.* at 957. Imposing a duty to improve on the defendant "would defeat the stated purpose of the construction statute of repose, that being the insulation of participants in the construction process from defending against stale claims."

*Id.* at 958. The *Wright* court distinguished *MBA Enterprises* on grounds that the latter case involved an "ongoing duty of care related to the presence of explosive gasses in the instrumentality at the heart of that case." *Id.* at 957.

¶ 32    M&S asserts that its cause of action is distinct from *Wright* because the roof presented an innately dangerous condition or instrumentality, like the gas pipes in *MBA Enterprises*. However, similar to the plaintiff in *Wright*, M&S is merely attempting to plead around the defect in the initial construction of the roof, a claim that is subject to section 13-214(a).

¶ 33    M&S further argues that *The Lombard Co. v. Chicago Housing Authority*, 221 Ill. App. 3d 730 (1991), upon which the circuit court relied, is distinguishable from the present case. In *Lombard*, the plaintiff sued the defendant landowner for breach of contract. *Id.* at 731-32. The court found that section 13-214 was applicable because the plaintiff alleged that the defendant failed to approve or reject shop drawings, thereby becoming involved in the "planning, supervision and management of the construction project." *Id.* at 735. The court held that "section 13-214 applies by its terms to all persons engaged in construction-related activities." *Id.* M&S contends that *Lombard* is inapplicable here because Allahverdi is independently liable for maintaining a hazardous condition on his property. As the *Lombard* court observed, in reviewing a motion to dismiss, "the court must look to the allegations of fact contained in the complaint to determine whether the particular activities the landowner has purportedly engaged in or failed to engage in, as the case may be, fall within the purview of the statute." *Id.* Here, as stated, the activities set forth in the complaint fell within the purview of section 13-214(a).

¶ 34                                  C. Discovery Rule

¶ 35    M&S next contends that even if the construction negligence limitation period in section 13-214(a) applies, dismissal was improper under the discovery rule because the date the claim accrued was a question of fact. According to M&S, it could not have known that the damage was "wrongfully caused" until M&S hired an engineer to inspect the roof in March 2016 and discovered that the roof was not attached to the structure of Allahverdi's building.

¶ 36    Allahverdi responds that M&S had sufficient information for a reasonable person to be put on notice as of the date of the occurrence on October 27, 2010, that the damage may have been wrongfully caused and further inquiry was necessary.

¶ 37    As stated, section 13-214(a) provides that the four-year limitation period on construction negligence claims is triggered when the party "knew or should reasonably have known of such act or omission." 735 ILCS 5/13-214(a) (West 2012). This "discovery rule" "tolls the statute of limitations until the plaintiff knows or reasonably should know it has been injured and that this injury was wrongfully caused." *Swann & Weiskopf, Ltd. v. Meed Associates, Inc.*, 304 Ill. App. 3d 970, 975 (1999) (citing *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (1981), and *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill. 2d 143, 153-54 (1985)). "At that point, the plaintiff has an obligation to conduct further inquiries to determine whether it has an actionable claim." *Id.* (citing *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171 (1981)). The purpose of the discovery rule is to "ameliorate the potentially harsh effect of a mechanical application of the statute of limitations that would result in it expiring before a plaintiff even knows of his cause of action." *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 52.

¶ 38    "While the time at which a party knows or should reasonably know of both an injury and that it was wrongfully caused is generally a question of fact for the fact finder [citation], where it is apparent from the undisputed facts that only one conclusion can be drawn, the question becomes one of law for the court [citation]." *Freeport Memorial Hospital v. Lankton, Ziegele, Terry & Associates, Inc.*, 170 Ill. App. 3d 531, 535 (1988) (affirming dismissal of the plaintiff's negligent design and construction action under section 2-619 as untimely filed (citing *Knox*, 88 Ill. 2d at 416, and *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981))).

¶ 39    Here, the facts known to M&S are not disputed. Based on M&S allegations, it learned that its property had been damaged and what caused that damage on October 27, 2010. That is, part of Allahverdi's roof uplifted in high winds and landed on nearby power lines, causing a power surge that damaged M&S's machines. The president of M&S went to the site of the electrical lines shortly after and took photographs of the roofing materials near the electrical lines. Allahverdi was also present and he pointed at the roofing materials and informed the president of M&S that it happened when his employee opened the dock door. At that point, M&S undoubtedly knew that it sustained damage caused by Allahverdi's roof detaching and crashing into the power lines.

¶ 40    M&S contends, however, that it did not know the damage was "wrongfully caused" at that point and it did not discover the wrongful cause until almost six years later, in March 2016, when it hired McCann to investigate. M&S argues that the fact that the roof decking was not properly attached to the building structure was only discoverable upon close inspection.

¶ 41    As our supreme court has made clear, "the term 'wrongfully caused' does not require knowledge of negligent conduct or the existence of a cause of action." *Id.* (citing *Knox*, 88 Ill. 2d at 416). A plaintiff need not have " 'knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action' " before the limitations statute is triggered. (Emphasis omitted.) *Castello v. Kalis*, 352 Ill. App. 3d 736, 744 (2004) (quoting *Young v. McKiegue*, 303 Ill. App. 3d 380, 388 (1999)). As such, "[t]he law is well settled that once a party knows or reasonably should know both of his injury and that it was wrongfully caused, 'the burden is upon the injured person to inquire further as to the existence of a cause of action.' " *Id.* (quoting *Witherell*, 85 Ill. 2d at 156); see *Nolan*, 85 Ill. 2d at 171 ("[O]nce it reasonably appears that an injury was wrongfully caused, the party may not slumber on his rights.").

¶ 42    Here, M&S reasonably should have suspected possible wrongful causation and, at a minimum, should have been compelled to inquire further when its neighbor's roof uplifted in the wind and hit the power lines, causing damage to its property. In that regard, two cases in particular assist us in determining that the limitations period began to run on the date Allahverdi's roof detached and caused the damage.

¶ 43    In *AXIA, Inc. v. I.C. Harbour Construction Co.*, 150 Ill. App. 3d 645, 648 (1986), an office building began to leak shortly after construction was completed in 1978, and the building owner notified the architect and general contractor of the leaks within a year. Four years later, the building owner hired a consultant to determine the cause of the leaks, and the consultant concluded that design and construction deficiencies were to blame. *Id.* at 648-49. The building owner instituted suit in 1984, but it was dismissed as being time-barred. *Id.* at 649-50. On appeal, the building owner argued, similar to M&S's argument here, that its action did not accrue until the consultant issued its report, as it had no knowledge of the real cause of the problem until then. *Id.* at 650. However, the court rejected this argument and found that the

limitations period was triggered when the building owner notified the contractor of the water leakage issue within one year of completion of the building. *Id.* at 651. This "indicate[d] that it possessed the requisite amount of information necessary to further inquire whether the problem was actionable." *Id.*

¶ 44       Also helpful to our analysis is *Swann & Weiskopf, Ltd.*, 304 Ill. App. 3d 970. There, the plaintiff was hired for design services and the plaintiff retained the defendant subcontractor to design a storm water removal system, which experienced flooding problems shortly after the project was completed. *Id.* at 972. The plaintiff contended on appeal that its complaint was not time-barred because it did not discover its claim against the subcontractor until the subcontractor acknowledged the defective design approximately five years after the project's completion. *Id.* at 974. This court held that the plaintiff "possessed enough information 'to inquire further' about" the allegedly defective design when the plaintiff was notified of the flooding problems and sent its project manager and the subcontractor to investigate. *Id.* at 976.

¶ 45       In a similar fashion, M&S had an obligation to conduct further inquiries when its president discovered that the damage was caused when part of Allahverdi's roof blew off and hit the power lines during the windstorm and Allahverdi informed her that the roof uplifted when the dock doors were opened. At the least, M&S was placed on notice that further inquiry was necessary. See *Castello*, 352 Ill. App. 3d at 745. That M&S was placed under a burden as of October 27, 2010, to further investigate rings especially true considering that it filed suit months before it received the engineering report. M&S filed its lawsuit against Allahverdi on August 14, 2015. The report of its engineering expert was issued on March 26, 2016. Thus, M&S filed its complaint seven months *before* it claims it was capable of knowing that the damage was wrongfully caused. This demonstrates that while it may not have known exactly why the roof detached before McCann issued his report, it nevertheless knew the damage had been wrongfully caused. See *McCormick v. Uppuluri*, 250 Ill. App. 3d 386, 391-92 (1993) (holding that, as a matter of law, the statute of limitations on the plaintiff's medical malpractice claim began running on the date he filed his first lawsuit because the plaintiff "must have had sufficient information concerning his injury and its cause for plaintiff to have instituted suit. Even if plaintiff did not, we must impute it to plaintiff. To hold otherwise in this case would make a mockery of the court system."); see also *155 Harbor Drive Condominium Ass'n v. Harbor Point Inc.*, 209 Ill. App. 3d 631, 644 (1991) (upholding the trial court's ruling that, as a matter of law, the plaintiff knew of its injury and that it was wrongfully caused when it filed its initial lawsuit, with respect to other defendants subsequently added to the litigation).

¶ 46       We find that the cases cited by M&S on appeal entail circumstances distinguishable from the present case. In *Henderson Square*, 2015 IL 118139, ¶ 54, the plaintiffs experienced minor water leakage in their condominium units in 2007 and 2008 and had repairs done, but the leaks persisted. The plaintiffs eventually engaged an engineer and contractor to investigate and undertake invasive testing in 2009, and they learned once the walls were opened up that the units had been so poorly constructed that they would have to be reconstructed. *Id.* The plaintiffs also learned in 2009 that the defendants had made false representations concerning the construction. *Id.* The defendants argued that the limitations period began running when the plaintiffs first knew there was water leaking into the units. *Id.* ¶ 55. Our supreme court held that the date of discovery was a question of fact precluding dismissal under section 2-619. *Id.* The court observed that "it is possible that the minor repairs in the present case, coupled with the limited nature of the water infiltration experienced, was enough to reasonably delay

plaintiffs' hiring of professional contractors to open up the wall and to discover the latent defects." *Id.* ¶ 59.

¶ 47 Next, in *Graham*, 109 Ill. 2d at 153-54, our supreme court held that a question of fact existed as to when the plaintiff county had the requisite knowledge to trigger the limitations period where the county became aware of moisture problems on the exterior walls of a county building constructed in 1974 but did not file suit until 1982. The county informed the architect of the moisture problems in 1974 and also of cracks in masonry walls and foundation that occurred over time, and the architect suggested certain causes (which were not actionable) and repairs, which were attempted over the years. *Id.* at 148-49. The court held that the county was aware of the moisture problem in 1974, but "it is impossible to state, as a matter of law, that this knowledge was sufficient to trigger the running of the limitations period. It is possible that the suggestions of the architect and the resulting repairs were adequate to keep a reasonable person from investigating further." *Id.* at 154.

¶ 48 Lastly, in *Society of Mount Carmel v. Fox*, 31 Ill. App. 3d 1060, 1060-61 (1975), the plaintiffs sued their architect for the faulty design of a school. The plaintiffs noticed cracks and defects in the building more than five years before filing their complaint, but the defendant architects assured the plaintiffs that the defects were merely "maintenance problems." *Id.* at 1060. The plaintiffs argued that the limitations period did not begin to run until they obtained a contractor's report sometime later, which concluded that the cracks were the result of a design defect. *Id.* at 1061. Based on (1) the plaintiffs' assertion that they neither knew nor had any way of knowing of the design defect and they did not discover it until the contractor's report, (2) the defendants' assurances that the cracks were merely maintenance issues, and (3) that there was no evidence in the record that would show that plaintiffs knew of the alleged defective design of the building as the cause of the defects prior to 1969, the court reversed the summary judgment holding in favor of defendant and held the discovery date was the date the plaintiffs received the report informing them of the design defects, and not when they first observed the cracks in the building. *Id.* at 1061-63.

¶ 49 There are crucial differences between the above cases and the present circumstances. *Henderson Square*, *Graham*, and *Fox* all involve damage that occurred incrementally over time. They also entailed repairs that were made over time that initially appeared to remedy the problems. In contrast, the damage in the present case occurred suddenly during high winds. The present case does not involve any minor repairs performed over time that seemed to fix the issue. Additionally, M&S's cases involved circumstances where the defendants made certain representations that hindered or delayed discovery of the cause of the damage and their responsibility for it. Here, in contrast, there was no evidence of any representations by Allahverdi after the incident on October 27, 2010, which could have deterred M&S from investigating further into the cause of the damage. There are no allegations that Allahverdi attempted to hide the cause of the accident or made false representations. Indeed, shortly after the incident, he informed M&S's president that his roof detached during the windstorm after the dock door of his building was opened.

¶ 50 We note that M&S contends that the circuit court erred in applying the "sudden traumatic event" rule to this case, as its application is limited to personal injury actions. We need not address whether to apply this rule here, however, because we have concluded that the application of the discovery rule here involves a question of law given the undisputed facts. That is, regardless of the application the "sudden traumatic event" rule, only one conclusion

- 11 -

can be drawn from the undisputed facts in the present case—that the limitations period was triggered at the time the roof of Allahverdi's building detached and caused damage to M&S's property. In any event, Allahverdi's point is well taken under the circumstances of this case. Allahverdi cites this rule in arguing that the limitations period began running on the date the damage occurred because the injury here was sudden and traumatic and not hidden, insidious, or chronic like a slow water leak or a cracking foundation, as in the cases relied upon by M&S.

¶ 51                                    III. CONCLUSION

¶ 52        For the reasons stated above, we affirm the circuit court's decision to grant Allahverdi's motion to dismiss pursuant to section 2-619(a)(5) of the Code. The parties' briefs adequately relay their respective contentions and adequately respond thereto, indicating that oral argument would not further our consideration of this appeal.

¶ 53        Affirmed.