2021 IL App (1st) 201268-U

No. 1-20-1268

Filed November 24, 2021

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except for the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| EXP U.S. SERVICES, INC. | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARROW ROAD CONSTRUCTION COMPANY, | ) | |
| LAKE COUNTY GRADING COMPANY, and | ) | |
| ROAD SAFE TRAFFIC SYSTEMS, | ) | |
| | ) | No. 16 L 11339 |
| Defendants. | ) | (consolidated with No. 16 CH 15119) |
| | ) | |
| | ) | |
| ARROW ROAD CONSTRUCTION COMPANY, | ) | |
| | ) | |
| Third-Party Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AUSTIN A. MCNICHOLS INSURANCE | ) | |
| AGENCY, INC. | ) | Honorable |
| | ) | Caroline K. Moreland |
| Third-Party Defendant-Appellee. | ) | Judge, presiding |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Dismissal based on statute of limitations affirmed where claim for negligent procurement
of insurance accrued when insured construction company received a certificate of
insurance and endorsement that clearly omitted an additional insured, which the
construction company was required to name under a subcontract, and the construction
company's complaint was filed more than two years later.

¶ 2     Arrow Road Construction Company (Arrow) appeals from the circuit court's order

dismissing its third-party complaint against Austin A. McNichols Insurance Agency, Inc.

(McNichols) upon finding that Arrow's complaint was barred by the applicable statute of

limitations. For the reasons that follow, we affirm.[1]

¶ 3                                        I. BACKGROUND

¶ 4     Arrow executed a contract on September 7, 2012, with F.H. Paschen, S.N. Nielsen &

Associates, LLC (Paschen) to perform work as a subcontractor on a road construction project

known as the Algonquin Bypass. Paschen, as the general contractor, required Arrow to maintain

insurance as specified in Schedule D of their subcontract. Among other things, Arrow was required

to maintain commercial general liability (CGL) insurance in the amount of $2 million per

occurrence and to provide a certificate of insurance naming Paschen "and its related entities, the

Illinois Department of Transportation [IDOT], and Exp. [EXP U.S. Services, Inc. (EXP)]"[2] as

additional insureds.

¶ 5     Arrow contacted its insurance broker, McNichols, and requested the required certificate.

Specifically, on October 16, 2012, an Arrow employee sent an e-mail to McNichols stating Arrow

needed a certificate of insurance for the Algonquin Bypass project and referenced Schedule D,

attaching a copy to the e-mail, for details on the requested insurance.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal
has been resolved without oral argument upon the entry of a separate written order.
    [2]EXP was another company involved in the Algonquin Bypass project.

¶ 6    Later the same day, McNichols provided the certificate of insurance. The certificate indicated that the policy issued, by insurer Bituminous Casualty Corp (BITCO), provided $1 million per occurrence in CGL coverage. The certificate noted Paschen, IDOT, and EXP were additional insureds.

¶ 7    Arrow renewed the BITCO policy in March of 2013. In April 2013, McNichols provided a new certificate for the Algonquin Bypass subcontract. The 2013 certificate again indicated CGL coverage in the amount of $1 million per occurrence. Paschen and IDOT were named as additional insureds, but EXP was not. The policy was renewed again in February 2014. McNichols provided a 2014 certificate with the same CGL coverage limit of $1 million per occurrence and again omitted EXP as an additional insured.

¶ 8    In June 2014, Paul Sitz was injured when his motorcycle struck a raised manhole in the Algonquin Bypass construction zone. Sitz subsequently filed an action against Paschen, Arrow, and EXP, among other defendants. While that action was pending, BITCO sent a letter to EXP, dated March 23, 2015, with a copy to Arrow, regarding Sitz's claim. Among other things, the letter stated, "EXP is not a named insured under the BITCO General Policy issued to Arrow Road."

¶ 9    On September 12, 2016, EXP filed a motion for leave to file an amended counterclaim in the Sitz case. The proposed counterclaim alleged Arrow failed to procure the insurance required under Schedule D of its subcontract with Paschen. EXP later withdrew its motion in the Sitz case and filed this action against Arrow and other subcontractors. (Case no. 16 L 11339). Again, EXP claimed that Arrow breached its contract with Paschen by failing to procure insurance in accordance with Schedule D. Specifically, EXP claimed the failure to include it as an additional insured on the BITCO policy caused EXP to incur loss and expenses, as BITCO would not defend or indemnify EXP in the Sitz case. Separately, BITCO filed an action for declaratory judgment

regarding its obligation to defend or indemnify EXP and Paschen. (Case no. 16 CH 15119). These two cases were consolidated.

¶ 10    In September 2018, Arrow filed a third-party complaint against McNichols for negligent procurement. Arrow amended its complaint in July 2019, again asserting negligent procurement but under alternate theories of professional negligence, breach of contract, and detrimental reliance. The amended complaint asserted that, in addition to being its insurance broker, McNichols provided risk management consulting to Arrow and regularly assessed risks and advised Arrow to develop an insurance program to meet Arrow's needs. McNichols's risk management consulting included project-specific insurance assessment. Arrow alleged that it specifically requested McNichols analyze the September 7, 2012, subcontract with Paschen. Arrow further claimed:

> McNichols later represented to Arrow that the [$2 million] requirement of the Paschen Contract was a risk eliminated by Arrow's primary BITCO policy with limits of [$1 million] since the umbrella liability policy would drop down to eliminate the perceived risk and provide Arrow and all additional insureds under the Paschen Contract with [$2 million] in primary coverage.

In addition, Arrow alleged:

> McNichols expressly represented to Arrow that in order to support its opinion that the policies of the insurance program covered the risks of the Paschen Contract, it had relied upon analysis of an insurance professional witness it had retained from IRMI.[3]

Arrow claimed that it relied on McNichols's representations, believing the umbrella policy would "drop down" to provide the coverage required under its contract with Paschen.

---

[3]The complaint only uses the initialism IRMI. Arrow's brief indicates IRMI stands for International Risk Management Institute.

¶ 11    McNichols filed a motion to dismiss Arrow's amended third-party complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2012)). McNichols argued that Arrow's claim accrued no later than February 2014, when Arrow received the certificate under its renewed policy. Since the defects were apparent from the certificate, McNichols argued Arrow's 2018-filed complaint was outside the two-year statute of limitations for claims of negligent procurement of insurance.

¶ 12    Arrow countered that its claim did not accrue until EXP filed its motion for leave to file an amended counterclaim in the Sitz case in September 2016. That pleading, according to Arrow, was the first indication that, as alleged by EXP, Arrow failed to procure the insurance required under the Paschen contract. Arrow pointed to the allegations in its amended third-party complaint that it reasonably relied on McNichols's representation that the umbrella policy would "drop down" to cover the $1 million discrepancy between the $2 million in CGL coverage required under the Paschen contract and Arrow's policy limit of $1 million in CGL coverage. Due to its reliance on McNichols's representation, Arrow insisted that the discovery rule applied, and, therefore, its claim did not accrue when it received the certificates. Rather, Arrow could not have discovered its claim until 2016, when EXP alleged Arrow's policy was deficient.

¶ 13    Initially, the court ruled on McNichols's motion to dismiss orally. The court noted that Illinois law treats negligent procurement of insurance as a tort arising out of a contract and, thus, the cause of action accrues when the contract is breached, not when the party sustains injury. Quoting from *American Family Mutual Insurance Company v. Krop*, 2018 IL 122556, the court stated that "insurance customers are injured as soon as an insurance producer delivers a policy that does not conform to the customer's request," but the court noted there are exceptions. The court found that McNichols delivered the certificate that Arrow requested in 2012 and again upon

renewal in 2013 and 2014, and based on those certificates, Arrow should have been able to discover the defects in coverage. The court went on to find that Arrow had not pled an exception to the *Krop* rule. Thus, the court found Arrow's claims filed in 2018 were beyond the two-year statute of limitations.

¶ 14    Arrow filed a timely motion to reconsider, arguing that the facts pled in its complaint showed its claims fell within an exception contemplated in *Krop*. The court denied the motion by written order. Arrow appealed the court's dismissal of its third-party complaint.

¶ 15                                    II. ANALYSIS

¶ 16    A motion to dismiss under section 2-619 admits the legal sufficiency of the complaint but asserts a defense that defeats it. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. Under section 2-619(a)(5), a defendant may move for dismissal upon the grounds that the action was not commenced within the time limited by law. 735 ILCS 5/2-619(a)(5) (West 2012). Whether dismissal is proper under section 2-619 and whether an action is barred by a statute of limitations are legal questions. *M & S Industrial Co. v. Allahverdi*, 2018 IL App (1st) 172028, ¶ 15. Thus, we review the dismissal of a complaint on this basis *de novo* (*id*.), meaning we consider the motion anew and perform the same analysis as a trial court. *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 20. In evaluating the motion, a court " 'must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party' and take as true all well-pleaded facts and reasonable inferences derived therefrom." *Allahverdi*, 2018 IL App (1st) 172028, ¶ 15 (quoting *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008)). Dismissal is appropriate only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Krop*, 2018 IL 122556, ¶ 13.

¶ 17        Section 13-214.4 of the Code provides, in relevant part, "[a]ll causes of action *** against an insurance producer *** concerning the *** failure to procure any policy of insurance shall be brought within 2 years of the date the cause of action accrues." 735 ILCS 5/13-214.4 (West 2012). The statute does not define what constitutes accrual of such a claim. *Krop*, 2018 IL 122556, ¶ 17. However, our supreme court held in *Krop* that "when customers have the opportunity to read their insurance policy and can reasonably be expected to understand its terms, the cause of action for negligent failure to procure insurance accrues as soon as the customers receive the policy." *Id.* ¶ 2. This rule follows from recognition that negligent procurement of insurance is a tort arising from a contractual relationship (*id.* ¶ 18) and "insurance customers are injured as soon as an insurance producer delivers a policy that does not conform to the customers' request." *Id.* ¶ 35. Furthermore, such a claim does not involve a fiduciary duty and insurance customers are obliged to read their policies. *Id.* ¶ 29.

¶ 18        Nonetheless, our supreme court acknowledged there may be exceptional circumstances "in which the policyholder reasonably could not be expected to learn the extent of coverage simply by reading the policy." *Id.* ¶ 36. These include policies with contradictory provisions or policies that fail to define key terms. *Id.* The court also indicated the statute may be tolled when liability arises from events that could not have been imagined at the time a policy was purchased or where a customer reasonably relies on an agent's representations. *Id.* (citing *Scottsdale Insurance Co. v. Lakeside Community Committee*, 2016 IL App (1st) 141845, ¶¶ 36-37, and *Groce v. American Family Insurance Co.*, 5 N.E. 3d 1154, 1159 (Ind. 2014)).

¶ 19        Here, Arrow argues that it pleaded sufficient facts to invoke an exception to the *Krop* rule that negligent procurement claims accrue upon receipt of the policy. Specifically, Arrow's complaint asserted that it reasonably relied on McNichols's representations that the umbrella

liability coverage would "drop down" to provide the additional $1 million in primary CGL coverage. Interpreting the pleading in the light most favorable to Arrow and drawing reasonable inferences therefrom, as we must, this allegation avers that McNichols caused Arrow to disregard the apparent inadequacy in CGL coverage on the certificates of insurance listing the CGL policy limit as $1 million per occurrence instead of $2 million. In other words, because of McNichols' representation, Arrow believed the $1 million per occurrence in CGL limit meant $2 million for purposes of its subcontract with Paschen and, therefore, Arrow believed its policy complied with Schedule D. However, we need not decide whether this allegation is sufficient to invoke an exception to the *Krop* rule, because Arrow has not pled any facts to indicate it had a basis to disregard the omission of EXP as an additional insured, which was apparent from the face of the certificates and attached endorsements in 2013 and 2014.

¶ 20    Importantly, Arrow's BITCO policy did not conform to Schedule D in two respects. First, it only provided $1 million in CGL coverage per occurrence instead of the required $2 million. Second, when the policy renewed in 2013 and thereafter, EXP was not named as an additional insured, as required. EXP's omission was obvious from the face of the certificates and accompanying endorsements provided in April 2013 and again in February 2014. Thus, Arrow could have learned and understood that EXP was not named as an additional insured "simply by reading the policy." *Krop*, 2018 IL 122556, ¶ 36. The omission was not obscured by contradictory provisions or undefined terms. Nor does this case involve an unimaginable occurrence. Arrow's complaint fails to plead any facts, no matter how favorably construed, to assert or imply that McNichols represented to Arrow that the policy complied with Schedule D despite EXP's omission as an additional insured. Even if Arrow could be excused for disregarding the $1 million difference in CGL coverage due to its reliance on McNichols's representation, Arrow pleads no

facts supporting a reason to excuse it for failing to act on EXP's omission as an additional insured. Consequently, Arrow has not presented an exceptional circumstance for this court to withhold application of the *Krop* rule. Therefore, we find that Arrow's cause of action accrued when it received the certificates of insurance and accompanying endorsements in April 2013 and February 2014. We need not discern between the two dates as Arrow's third-party complaint filed in September 2018 was well beyond two years from either date.

¶ 21  To be sure, EXP's omission as an additional insured under Arrow's policy is crucial in this case since EXP's omission is the basis for its claim against Arrow. By omitting EXP as an additional insured, Arrow was exposed to such a claim regardless of the level of CGL coverage. That consideration notwithstanding, the omission of EXP as an additional insured by itself was sufficient for Arrow to discover that its policy did not conform to Schedule D even if McNichols caused Arrow to ignore the $1 million discrepancy in CGL coverage. A cause of action for negligent procurement "accrues as soon as the plaintiff should discover some injury even if the full extent of the injury is not evident." *Krop*, 2018 IL 122556, ¶ 35 (citing *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 364 (1995)).

¶ 22                                    III. CONCLUSION

¶ 23  Based on the foregoing, we find Arrow's third-party complaint for negligent procurement was barred by the limitations period provided in section 13-214.4 of the Code. Accordingly, we affirm the circuit court's order granting McNichols's motion to dismiss under section 2-619.

¶ 24  Affirmed.